HANCOCK MUT. LIFE INS CO. (WINCHELL v.). See Case No. 17,866.

---

## Case No. 6,013.

### HANCOX v. FISHING INS. CO.

[3 Summ. 132; 1 Law Rep. 5.][1]

Circuit Court, D. Massachusetts. Jan., 1838.

INSURABLE INTEREST—PROFITS OF WHALING VOYAGE.

1. The usage of trade must be taken into consideration in the construction of policies of insurance.

2. An insurance on outfits in a whaling voyage does not terminate pro tanto with their consumption or distribution; but attaches to the proceeds of the adventure.

3. A lien, or an interest in the nature of a lien. is an insurable interest. And it will make no difference, if the party has a right to pursue his debtor personally for the debt, on account of which the lien attached.

[Cited in Merchants' Mut. Ins. Co. v. Baring, 20 Wall. (87 U. S.) 163.]

4. An interest does not cease to be insurable in the progress of the voyage. simply because it is subject to contingencies, or has not at the moment any thing corporeal or tangible, to which it is attached.

[Cited in French v. Rogers. 16 N. H. 180; Sawyer v. Dodge Co. Mut. Ins. Co., 37 Wis. 541.]

5. On sealing voyages to the South Sea, it is the usage to take on board stores, for the use of the crew. which are dealt out and sold to them during the voyage, and constitute a lien upon their lay, or share of the profits. The plaintiff. who had shipped clothes under this usage, to the amount of $1,000, caused the same to be insured, "and the proceeds thereof," by a valued policy. After clothes to the amount of $950 had been dealt out and sold to the crew, the vessel was lost. *Held*, that the property insured was in the nature of an outfit, and that the plaintiff was entitled to recover the full amount of the insurance, according to the valuation in the policy, leaving to the underwriters all their rights to salvage under the abandonment.

[Cited in Greely v. Smith, Case No. 5,750; The Fern Holme, 46 Fed. 122.]

[Cited in Forbes v. Manufacturers' Ins. Co., 1 Gray, 373; Excelsior Fire Ins. Co. v. Royal Ins. Co. of Liverpool, 55 N. Y. 357.]

6. Quaere; as to the validity of an insurance by seamen of their shares in the proceeds of an adventure, where the shares are in the nature of wages, though given in lieu thereof.

[Cited in Henshaw v. Mutual Safety Ins. Co., Case No. 6,387; Niphon's Crew, Id. 10,277.]

7. Quaere; where the assured had property in the goods insured at the time of the insurance, whether a subsequent change of interest, before or after loss, would affect his right to recover.

[Cited in Henshaw v. Mutual Safety Ins. Co., Case No. 6,387; Spare v. Home Mut. Ins. Co., 15 Fed. 709.]

[Cited in McDonald v. Black, 20 Ohio, 193.]

Assumpsit on a policy of insurance. The policy was as follows: "The president, &c., of the Fishing Insurance Company, do by these presents, cause Z. Cook, Jr., for P. Hancox, to be insured lost or not lost one thousand dollars on clothes and the proceeds thereof, on board schooner Emily, at and from New York, on the first day of September, at noon, to the South Seas, and elsewhere, for the purpose of taking seals and oil, and to continue to the termination of her voyage at any port in the United States, with general liberty and the privilege of taking skins and procuring refreshments, and information and any thing else, at any port or place that the master may think for the benefit of the voyage, entitled to the same average as outfits and cargo." Liberty was also given to ship home skins by any other vessel or vessels. In case of loss, the policy was to be sufficient proof of interest. The premium was eight per cent., per annum, warranting eight per cent. The clothing and proceeds were valued at the sum insured. The policy contained the usual perils in Boston policies. The declaration alleged a loss by the perils of the seas. Plea, the general issue. By consent of the parties, a verdict was taken for the plaintiff, for $1200, subject to the opinion of the court upon a statement of facts admitted by the parties; and the verdict to be altered and amended according to the opinion of the court.

The facts will be found embodied in the opinion of the court.

Mr. Parsons and P. W. Chandler, for defendants, insisted:

1. That the policy was to continue only until the clothes were sold. If it was to continue till they were sold, delivered, and paid for, it amounted to an insurance on seamen's wages, and was void.

2. That the plaintiff had no insurable interest, after the goods were sold. That, to recover on the policy, his interest must have continued till the loss happened. But at that time he had no control over the property, and

no right of property in it. He had suffered no loss, as the crew were personally liable to him.

3. That the proceeds of the cargo had been paid for once, by the other policies, and the plaintiff must look to the amount there received for his remuneration.

4. That so far as the clothes were affected, there were no proceeds, other than the debts of the sailors. If the catchings were insufficient to pay the master and owners for advances, and if Hancox could recover, it must be because there were no catchings,—and the policy was held by the court to guarantee the catchings, as well as the sailors' debts.

5. That the plaintiff, as one of the owners, was fully insured by the other policies, and was fully paid, and if he now recovered, he would have, from the same office, a double payment of his loss.

C. G. & F. C. Loring, for plaintiff.

STORY, Circuit Justice. The questions arising upon this policy are of a somewhat novel character. The insurance is upon "clothes and the proceeds thereof," on a sealing voyage for seals and oil, in the South Seas, and back to the United States. In the course of the voyage, the schooner was shipwrecked on Refreshment Island, one of the group of the Tristan d'Acunha Islands, in the South Seas; and the vessel and cargo, then consisting of about ninety barrels of whale and elephant oil, and thirty-six seal-skins, were totally lost, with the exception of the thirty-six seal-skins, about fifty barrels of whale oil, worth $600 or $700, and one hundred and eighty-two skins, worth about $2600, which had been previously sent home in another vessel, and had safely arrived. According to the usage of this trade, it is customary to take on board clothing, bedding, and stores of all kinds for the use of the crew during the voyage, which are dealt out and sold to the crew, according to their wants during the voyage, by the master, and they are charged against the crew accordingly. They are sometimes put on board by the owner, and sometimes by other persons; and upon all such sales, the master is entitled to a commission. The crew in these voyages, receive a certain portion of the profits and proceeds of the oil and skins taken during the voyage, in lieu of wages. Their shares of the proceeds of the voyage are received, and sold by the owners, and are liable for all advances made to them by the owners, the master, and the shippers of clothes during the voyage, in the following order; first, the advances of the owners are to be paid; next, those of the master; and lastly, those of the shippers.

In the present case, the plaintiff was a shipper of clothes to an amount as invoiced, exceeding $1000, under the usage; and it was agreed, that they should be taken on board and dealt out by the master to the crew, as they should need them; and be charged to them accordingly. The master was to receive a commission of seven per cent. for his services. Accordingly, in the course of the voyage, and before the shipwreck, the master had dealt out and sold to the crew about $950 worth of the clothing; and there remained at the time of the shipwreck, unsold, about $50 or $100 worth of the clothing, which was then lost. It seems, that the shares of the crew, in the proceeds of the cargo sent home, were insufficient to pay the advances due to the owners and master; and therefore, nothing could be obtained from that source by the plaintiff. Some of the crew ran away; others of them have gone to places unknown; and others have no known places of residence. Upon receiving information of the loss, the plaintiff, through his agent, abandoned to the underwriters for a total loss. Three other policies had been effected by the owners of the schooner Emily, on the schooner and her outfits, for the same voyage; upon which also, it seems, abandonments have been made, and they have received payment, as for a total loss.

Such are the general facts; and upon these the question arises, whether the plaintiff is entitled to recover for a total loss; if not, whether he is entitled to recover for a partial loss. That he is entitled to recover the amount of the clothing which actually perished in the shipwreck, does not seem to me a matter upon which there can be any real dispute. No point of this sort was made at the argument; and I do not well see how any can be made. The real question turns upon the right to recover for a total loss. That this was a policy upon a real interest is clear; and the policy attached upon that interest to the full amount insured. The point of controversy is, whether the policy upon the goods sold had terminated at the time of the shipwreck. The argument for the plaintiff is, that, upon the construction of the policy, it was either (1) a policy upon the clothing, until sold to the crew; or (2) it was a policy upon the clothing, until it was sold, delivered, and paid for. If the former be the true construction, then it is said that by the sales to the crew the policy pro tanto was discharged. If the latter be the true construction, then it amounts in effect to an insurance upon the seamen's wages; for their shares of the proceeds are in the nature of wages; and the policy of the law prohibits such an insurance. The terms of the policy, construed without any reference to the usage of the trade, would not involve any real difficulty. A policy upon goods and their proceeds is a policy, which covers the original goods, while they remain subject to the risks in the policy; and any other property, in which the proceeds of those goods are invested, when taken on board in lieu thereof, and subjected to the like risks. But it is plain, that such could not have been the intention of

the parties to this policy; for though it was contemplated, that the clothing should be sold, it was never contemplated, that the proceeds should be, in a strict sense, specifically invested in any other property during the voyage. The usage of the trade, which must be taken into consideration in construing all policies, fully explains this whole matter. Stripped of its artificial texture, the real object of the policy was to cover the risks of the shippers, arising from the loss of the goods, or the frustration of the voyage, by any of the perils insured against. The goods were to be put at risk. They were to be sold to the seamen; and if the voyage was successful, the shipper confidently looked to the proceeds of the adventure for the due payment of the sales made to the seamen. His reliance upon their personal responsibility was altogether a secondary consideration. As soon as the goods were sold to the seamen, the shipper acquired an interest in the success of the voyage, equal to the sales. It was something in the nature of an inchoate lien, and which became an actual lien upon the shares of the seamen in the proceeds of the adventure pro tanto, as fast as they were obtained. It was not against the marine perils alone to the goods themselves, while they were unsold, that the policy meant to protect the shipper; but also against the hazards of a loss of the voyage and adventure. It is analogous to an insurance upon outfits in a fishing or whaling voyage, where a large portion of the outfits are continually in the process of consumption in the progress of the voyage, and are expected to be repaid out of the proceeds of the adventure. No one ever supposed, that an insurance upon outfits terminated pro tanto with every day's consumption or destruction of the outfits; or, that such a policy did not attach upon the proceeds of the adventure, though they could not be deemed in a strict sense the proceeds of the outfits. This is sufficiently apparent from what was said by the court in Brough v. Whitmore, 4 Term R. 206, and Hill v. Patten, 8 East, 373. An insurance on the ship always includes the provisions of the crew for the voyage; and if the ship be totally lost during the voyage, no deduction is ever made on account of the provisions antecedently consumed, whether the policy on the ship be open or valued. See, also, Haskins v. Pickersgill, 2 Marsh. Ins. 727; 1 Phil. Ins. (1st Ed.) 71, 72; 2 Phil. Ins. (2d Ed.) 43. The terms of the present policy appear to me clearly to require this interpretation. It is a policy, as has been already stated, on the "clothes, and the proceeds thereof." The word "proceeds" can here have no sensible meaning with reference to the usage of the trade, unless it means the proceeds of the adventure. And then, again, it is added, that the insured is to be "entitled to the same average as outfits and cargo." So that the subject-matter of the insurance in this case is treated by the underwriters themselves as governed by the same principles and entitled to the same average losses as outfits and cargo in such voyages are. The valuation in the policy, also, in a case of this sort, seems to me to point clearly to an understanding of the parties, that the interest insured and property put on board are to be treated as of the same value during the whole of the adventure, for all the purposes of the voyage. Nor does the policy stop here; for it goes on to provide, that in case of loss the policy itself is to be sufficient proof of interest.

If, then, under the usage of trade and the terms of the policy, we are to treat this as in the nature of a policy on outfits, it would seem that there was no substantial objection in the way of the right of the plaintiff to recover for a total loss under the abandonment. If, in the present case, the vessel had been successful in her outward voyage, and upon the homeward voyage had been lost, with her catchings and other proceeds on board, it would be difficult to resist the claim of the plaintiff to a recovery for a total loss. He would have had a lien on the shares of the seamen in those proceeds, or some interest in the nature of a lien. It seems perfectly clear, that a person having a lien, or an interest in the nature of a lien, on the property on board, has an insurable interest. And it will make no difference in such a case, that he might still have a right to pursue his debtor personally for the debt, on account of which the lien attached. There are many authorities in the books to this effect; and among them are Godin v. London Assur. Co., 1 Burrows, 90; Lucena v. Craufurd, 2 Bos. & P. (N. R.) 294; Hill v. Secretan, 1 Bos. & P. 315; Wolff v. Horncastle, Id. 316; Wells v. Philadelphia Ins. Co., 9 Serg. & R. 103; Seamans v. Loring [Case No. 12,583]; Russel v. Union Ins. Co. [Id. 12,146]; and the cases of mortgagees, factors, and agents, cited by Mr. Phillips, in his excellent treatise on Insurance. 1 Phil. Ins. (1st Ed.) 27, 41–51; Id. (2d Ed.) pp. 105–122; 2 Phil. Ins. (1st Ed.) 32–34; Id. 41–47, 61.

But, then, it is said, that in this case there were no proceeds, to which the lien did in fact attach; and the mere possibility of a lien is not sufficient to found an interest. This may be true sub modo. But here the question is not, as to an original interest in the clothing on and for the voyage; for that is clear. But the question is, whether the interest, once having attached to the policy, is gone by the subsequent sales; so that the plaintiff has ceased to have an insurable interest. Now, I am not aware, that any decision has been made, by which it has been established, that an interest ceases to be insurable in the progress of a voyage, simply because it is subject to contingencies, or has not at the moment any thing corporeal or tangible to which it is attached. What, in-

deed, upon such an interpretation, would become of insurances upon profits, or commissions, or freight, which are in the course of being earned?

One of the difficulties of the argument is in likening an insurable interest to any other interest in property. The truth is, that an insurable interest is sui generis, and peculiar in its texture and operation. It sometimes exists where there is not any present property, or jus in re, or jus ad rem. Inchoate rights, founded on subsisting titles, unless prohibited by the policy of the law, are insurable; as, for example, freight, respondentia, and bottomry. So it was held by a majority of the judges in Lucena v. Craufurd, 2 Bos. & P. (N. R.) 294, 295. They also held, that, where there is an expectancy, coupled with a present existing title, there is an insurable interest; words which approach very near to a description of the present case. After referring to the definitions by foreign jurists of the contract of insurance, they added: "These definitions clearly embrace a contingent interest, which is subject to the perils of the seas, and for the loss of which a compensation can be made." Lord Eldon, although he differed from some of the views of the majority of the judges, in that case said: "I have in vain endeavored, however, to find a fit definition of that which is between a certainty and an expectation; nor am I able to point out what is an interest, unless it be a right in the property; or a right derivable out of some contract about the property, which in either case may be lost upon some contingency affecting the possession or enjoyment of the property."[2] Now, these words are very expressive and direct, as to the nature of the very interest of the plaintiff in the present case. He had a right in the original property, and he had a right founded upon a contract about that property, which has been lost by the contingencies of the present voyage. Indeed, the policy in the present case seems studiously to have provided for the very case, which has happened, by the agreement of the underwriters, that in case of loss the policy itself shall be a sufficient proof of interest. In regard to another suggestion, that the policy is void as against public policy, because it in effect amounts to an insurance of seamen's wages, a few words may suffice. Assuming, for the purposes of the argument, that an insurance by the seamen themselves on their shares of the proceeds of the adventure would not be good, because they are in the nature of wages, though given in lieu of wages, (a point, upon which I desire to be understood as giving no

opinion,) it is a sufficient answer to the argument to say, that the present is not the case of such an insurance. The plaintiff has insured his own interest in the voyage, and not theirs. They may, indeed, in a possible case be benefited by this insurance; but the policy itself is not on wages or on shares in lieu of wages; but simply on the property originally shipped, and upon the proceeds of the adventure, so far as the plaintiff could or might have a lien thereon for his advances to the seamen.

It has been suggested, that the plaintiff has in fact sustained no loss, because for any thing that appears, he may still recover the debts due to him from the seamen; and if so, he has sustained no loss. This objection has already been in effect answered. The question is not, in cases of this sort, whether the party has actually lost his debt, which, if caused by the insolvency or death of the debtor, would not be by a peril within this policy; but the question is, whether he has lost the security for that debt by the perils insured against, which the underwriters agreed to assume upon themselves. A mortgagee or consignee of property may recover his insurance, if the property mortgaged or consigned is lost in the voyage, although the mortgagor or consignor still remains his debtor and is solvent. Then, again, it has been suggested, that the party insured must not only have an interest in the property at the time when the insurance was made, but also at the time of the loss. This I certainly have been accustomed to consider the established doctrine, not only in the American but in the English courts. It was certainly so laid down by a majority of the judges in the case of Lucena v. Craufurd, 2 Bos. & P. (N. R.) 295; and it has been repeatedly recognized in the American courts. See 1 Phil. Ins. 27; Carroll v. Boston Marine Ins. Co., 8 Mass. 515; Stetson v. Massachusetts Mut. Fire Ins. Co., 4 Mass. 330, 336, 337; 2 Phil. Ins. 27; Gordon v. Massachusetts Fire & Marine Ins. Co., 2 Pick. 249; Lazarus v. Commonwealth Ins. Co., 5 Pick. 76, 81. However, in the recent case of Sparkes v. Marshall, 3 Scott, 186, 2 Bing. N. C. 761, 774, 776, there are intimations of opinion by the court of common pleas in England that, if the assured had property in the goods insured at the time of the insurance, no change of interest afterwards, before or after the loss happened, would affect the right of the insurer to recover. Whether this doctrine, so novel and so difficult to be sustained upon principle, will be adhered to, is more than I am able to conjecture. I can only say, that nothing in my judgment in the present case proceeds upon the admission of any such doctrine. And, indeed, it is quite possible, that the court may have intended to restrict their observations to the particular frame of the policy in that case (the words of which are not given in the report), and under the peculiar circumstances there stated. The policy may

---

[2] Id. p. 321. See, also, on this same point, Wiggin v. Mercantile Ins. Co., 7 Pick. 271; Buck v. Chesapeake Ins. Co., 1 Pet. [26 U. S.] 151, 162, 163; and Columbian Ins. Co. v. Lawrence, 2 Pet. [27 U. S.] 25, 46, 47. See, also, what was said by Lawrence. J., in Lucena v. Craufurd, on this point (2 Bos. & P., N. R. 301.)

have been drawn up in general terms, "for whom it may concern."

Upon the whole, my opinion is, that the plaintiff in the present case is entitled to recover for a total loss. This opinion is founded upon the nature and terms of the present policy, operating upon the usage in this particular trade. I consider, that the parties to this policy intended to cover the whole interest of the plaintiff, as a valued interest for the whole voyage, not only in the original clothing, but in the proceeds thereof, when attached by a lien, or a claim in the nature thereof, to the shares of the seamen in the proceeds of the adventure; and further, that the property insured was to be treated, as in the nature of an outfit; and that, if by the perils insured against, the voyage was totally lost and frustrated, then that the plaintiff was entitled to recover the full amount of the insurance, according to the valuation in the policy, leaving to the underwriters all their rights to salvage, &c., under the abandonment, as in the common cases of an insurance upon outfits, and other special interests.