16  177
66  183

## French *v.* Rogers & a. & Tr.

One who has not an insurable interest in the property insured at the time of the loss, can not recover upon the policy. But in general a mortgager has an insurable interest to the extent of the value of the property insured, and it is the same whether the mortgage was made before or after the date of the policy.

Whether a clause in the act incorporating an insurance company, providing "that if the property be alienated by sale or otherwise, the policy shall thereupon be void," extends to avoid a policy in a case in which the property has been mortgaged, *quære.*

If one summoned as trustee have money of the principal defendant and another, jointly, he is not chargeable.

FOREIGN ATTACHMENT. The Trustees, the New-Hampshire Mutual Fire Insurance Company, disclosed that on the 24th day of November 1836, the defendant, with one Josiah Rogers since deceased, and one Daniel M. Head, applied jointly in writing for an insurance to be effected upon certain mills, and a policy was issued by the company in conformity with the application.

That on the 7th day of March 1841, while the term still subsisted for which the insurance was made, the property

was destroyed by fire. Between the date of the policy and the loss, however, the assured conveyed the premises in fee and mortgage to the Concord Bank, to secure the payment of their note for $23,000, and an entry to forc-close had been made.

The act of incorporation of the trustees contained a provision, that " When any house or other building shall be alienated by sale or otherwise, the policy shall there-upon be void, and be surrendered to the directors of said company to be cancelled."

Notice of the loss having been given to the directors of the company, they " Voted, that in this case the company are not liable to pay said claim nor any part thereof, for the reason that said policy is void, the said mills having been alienated by the insured before the fire happened."

It appeared that Josiah Rogers and his son, the defend-ant, who survives him, were partners in business, and owned two thirds of the property insured, and that Head owned the remainder.

*Nesmith*, for the trustees. The insurance company are not liable to the principal defendants as the assured. The policy was to the Rogers and Head. The plaintiff can charge the trustee only in cases in which the principal· debtor could maintain an action against him. 4 Mass. 85 ; 4 Mass. 238 ; 7 Mass. 149 ; Hammond on Ins. 3, 34 ; 16 E. 141 ; 1 Wend. 661 ; 11 Johns. 202.

By the disclosure it appears that there was a joint in-terest in the three parties to the policy. 3 Taunt. 106 ; 6 Mass. 460 ; 10 Mass. 377 ; 3 Phil. Ev. 442. One can not recover his portion of what two are entitled to. The trustees may have offsets against Rogers and son and Head. In·a suit brought by Rogers and son they might not be able to avail themselves of it. Head and Rogers still survive. *Morrison* v. *Blodgett*, 8 N. H. 238.

The policy is·void by the twelfth section of the act of

incorporation. By the second section every member of
the company is bound by the provisions of the act. The
alienation mentioned in the twelfth means as well condi-
tional as absolute alienation. The policy gives a lien
upon the estate for the payment of the premium. This
is lost by the alienation. It can not prevail against pur-
chaser or alienee, even with notice.

*Eaton*, for the plaintiff. The question is, whether there
was such an alienation in this case as to vitiate the policy.
The act of incorporation provides, that "When any house
or other building shall be alienated by sale or otherwise,
the policy shall thereupon be void," &c.

Words are to be construed with reference to the subject
to which they relate, and to the circumstances under which
they are used. An alienation may be of the whole estate
of the owner, or by mortgage only. What alienation is
contemplated here? The title was not insured, but the
interest only of the assured. We are not to presume that
the Legislature intended by the act of incorporation to
alter the common law, unless the words used necessarily
bear that construction. The principle of the common law
is, that if the assured has parted with his insurable inter-
est, the policy becomes void. 3 Fairfield 44.

It is also a general principle that as against all parties
but the mortgagee the mortgager is the owner of the
estate. The mortgage was therefore no alienation of the
insurable interest of the assured. What the company
insured still remains the property of the party insured.
*Gordon* v. *M. & F. Ins. Co.*, 2 Pick. 249; *Strong* v. *Ins.
Co.*, 10 Pick. 40. Though the equity of redemption be
sold, it was still held that the policy was not void. 1 Phil.
Ins. 105.

WOODS, J. It appears by the disclosure, that Josiah
Rogers and son, and Daniel M. Head, being the owners of

certain mills in Pembroke, caused them to be insured by the New-Hampshire Mutual Fire Insurance Company, summoned in this action as trustees. Rogers and son owned two thirds, and Head the remaining third part of the property in common. The property was destroyed by fire. The attempt is here to charge the company with the amount of the share of Rogers and son in the sum due upon the policy to them and Head.

In behalf of the company it has been contended, that inasmuch as the assured, Rogers and son and Head, after the policy was issued, mortgaged the mills to secure certain liabilities to the Concord Bank, by virtue of the twelfth section of the act of incorporation, which is made part of the policy by reference, and in which it is provided " That when any house or other building shall be alienated by sale or otherwise, the policy shall thereupon be void," the policy ceased to be binding.

At the time of the insurance, the assured doubtless had an insurable interest upon which the policy attached. They were the owners of the mills unincumbered. Prior to the fire and loss they mortgaged the premises to the Concord Bank, who had taken possession to foreclose the mortgage. The question then presents itself, whether there was still in the assured an insurable interest in the property at the time of the loss ; for if there was not, it would seem that in accordance with the established doctrine of the courts in England and in this country, the assured would not be entitled to recover upon the policy. *Lucena* v. *Crawford*, 5 Bos. & Pul. 269 ; *Gordon* v. *Mass. F. & Mar. Co.*, 2 Pick. 249 ; *Michael* v. *Commonwealth Ins. Co.*, 5 Pick. 76 ; *Carroll* v. *Boston Mar. Ins. Co.*, 8 Mass. 515 ; *Stetson* v. *Mass. Mut. Ins. Co.*, 4 Mass. 330 ; *Hancox* v. *Fishing Ins. Co.*, 3 Sum. 132 ; *Lane* v. *Maine Mut. Ins. Co.*, 3 Fairf. 44.

The interest remaining in Rogers and son and Head at the time of the fire and loss, was that of mortgagers

only; and the premises were in the possession of the mortgagees, who had entered to foreclose; but the right of redeeming still continued in the mortgagers. In *Lane v. Maine Mut. Ins. Co.*, it is said, that the party insured must in all cases of fire insurance have an interest or property at the time of insuring and at the time the fire happens; but he need not have an absolute and unqualified or even immediate interest in the property insured. Mr. Justice Story in *Hancox v. Fishing Ins. Co.* says, " The truth is, an insurable interest is *sui generis*, and peculiar in its texture and operation. It sometimes exists when there is not any present property, or *jus in re*, or *jus ad rem*." In *Lucena v. Crawford* it was held, that when there is an expectancy coupled with a present existing title, there is an insurable interest. In *Stetson v. Mass. Mut. Ins. Co.* a moiety of the building insured was conveyed in fee by the assured, the grantor reserving a term of years therein, and the grantee immediately reconveying in mortgage to the grantor, who demised the same to the mortgager for seven years reserving rent. It was objected that the assured had no insurable interest. The court said, " An objection of this kind is not supported by showing contracts affecting the formal title of the plaintiff in a part only of the subject of the insurance. His interest in part remains the same; and perhaps substantially, and for the purpose of repelling this objection, is to be considered unaltered in the whole of the premises insured.

In *Gordon v. Mass. F. & Mar. Ins. Co.*, after stating the law to be, that a man who has sold his property insured can not be said to suffer when the property is destroyed, that when there is no legal or equitable interest at the time of the loss, there is nothing for the insurance to operate upon, Mr. Chief Justice Parker remarks, " But a conditional transfer of property insured to secure a debt or liability, is not attended with the like consequences.

One who has mortgaged his vessel, even to its full value, has an insurable interest. I cite for this Phil. on Ins. 41 ; and in the margin may be found numerous English and American authorities in support of the position." "If the equitable interest of a mortgager is capable of being insured, I think it will follow that if the insured mortgages after the insurance is effected, he nevertheless continues to be interested, so as to have a right to recover in case of loss."

In *Strong* v. *Manufacturers Ins. Co.*, 10 Pick. 40, the policy contained a provision, that if the property should be sold, or conveyed in whole or in part, the policy should be void, and bore date the 29th of December 1828. The premises had been previously mortgaged. In January 1829, the equity of redemption was sold on execution, and the loss by fire occurred on the 23d day of April next following. One Stebbins became the assignee of the mortgage, and on the 6th of July 1829 took possession for condition broken. The court say, in delivering the judgment in that case, "Nor did any of the events subsequent to the insurance wholly divest the plaintiff of his interest ; for after the sale of the equity, still he had a right to redeem, and this right might constitute a valuable interest. The law would presume it so, the contrary not appearing. The value of the plaintiff's interest in the property insured is not material. If he had an insurable interest at the time the policy was effected, and also an interest at the time of the loss, he is entitled to recover the whole amount of damage to the property, not exceeding the sum insured."

The court further remark, "We do not see how the incumbrances on the plaintiff's property could be considered material to the risk. The destruction of the house did not extinguish the mortgage debts ; so that he was interested to the full amount of the value of the property insured."

Chief Justice Marshall in *Columbian Ins. Co.* v. *Lawrence*, 2 Peters 47, remarks, " That an equitable interest may be insured is admitted. We can perceive no reason which excludes an interest held under an executory contract; while the contract subsists, the person claiming under it has undoubtedly a substantial interest."

We think the cases cited and those summed up in Phillips on Insurance 26, on insurable interests, show that any actual interest, legal or equitable, is insurable, and the equity of redemption of a mortgage before foreclosure falls within the class of interests thus insurable. And upon common law principles, and judicial decisions aside from statute provisions, it would not seem open to doubt, that a mere mortgage of the property insured will not operate such a transfer or conveyance of the interest of the mortgager in the property insured, as will render void the policy of insurance.

But it is contended in this case by the trustees, that the conveyance in mortgage constituted an alienation of the property insured, within the meaning of the twelfth section of the act of incorporation, which provides that " When any house or other building shall be alienated by sale or otherwise, the policy shall thereupon be void, and be surrendered to said directors to be cancelled," &c.

In the case under consideration, the assured mortgaged the property to the Concord Bank, and the bank took possession of it prior to the loss, and were in possession at the time. Did that state of facts amount to an alienation of the buildings insured, within the meaning of the provision of the section of the act referred to ? Was it an alienation by sale or otherwise within the meaning of the act, and consequently within the terms of the policy, which refers to that act and adopts it as a part of the contract ?

In *Lane* v. *Maine Mut. F. Ins. Co., Paris*, J., in considering the provisions of an act of incorporation in its terms

precisely like that under consideration, remarks, "The object of the statute without doubt was, to render certain by positive enactment, what would otherwise have depended on common law principles and judicial decisions, namely, that the policy of the company should not be obligatory any longer than the property insured continued in the individual named in the policy of insurance as the owner, and that by a transfer of his interest, the policy should be void. This construction is believed to be in accordance with general usage and the intention and understanding of the parties."

"The insurers in assuming the risk provide for the continuance of the interest of the assured in the property covered, so long as their liability continues. In other words, they guard against its becoming a gaming or wager policy in any event. Accordingly so long as the property covered belongs to the assured, whether it be in his own possession or in that of an agent, servant, or lessee, the company's lien remains, and an insurable interest remains. But when the property is alienated, that is, when the assured is divested of title by sale, or in any other manner, the lien of the company is dissolved, and the insured is no longer a member of the company. If a loss then happen, it is not his loss; for as he had no property, he could sustain no loss, and consequently could be entitled to no satisfaction. The party insured must, in all cases of fire insurance, have an interest in the property at the time of the insurance and at the time the fire happens."

And we have seen that a conditional transfer of the property insured, to secure a debt or a liability, does not divest the assured of all insurable interest. *Gordon* v. *Mass. F. & Mar. Ins. Co.*, 2 Pick. 258.

And in *Strong* v. *The Manufacturers Ins. Co.* it was decided, that the mortgager of a house, the equity of redemption of which was sold on execution, has an insurable interest in the house so long as his right to redeem

French v. Rogers.

continues; and that in such cases, in the event of a loss, the assured is entitled to recover the whole sum, if the value of the property destroyed amounts to so much. It was held also that incumbrances by way of mortgage and defeasible or redeemable sale, were not material to the risk. It was there said, that the destruction of the house did not extinguish the mortgage debt, so that the assured was entitled to the full amount of the value of the property insured.

And it would seem to be well settled law, that a policy will not upon common law principles, aside from statute provisions, become wholly inoperative so long as the assured retains any insurable interest in the property insured; but that the same will remain valid, and protect such remaining interest of the assured, to the extent of the value of the property, not exceeding the sum insured. It is only in a case in which the interest of the assured becomes entirely extinct, that the policy becomes altogether void. Parting with a portion of his interest, will not work such a result. *Strong* v. *Manufacturers Ins. Co.; Gordon* v. *Mass. F. & Mar. Ins. Co.; Stetson* v. *Mass. Mut. F. Ins. Co.*, before cited.

In the case of the *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 385, it was said, " If the assured sells the property and parts with all his interest therein before the loss happens, there is an end of the policy, unless it was assigned to the purchaser with the assent of the company; or if he retains but a partial interest, it will only protect such insurable interest as he had in the property at the time of the loss."

Was it the design of the statute to alter the common law principle governing the rights of the assured in cases like the present, or was it the design only to establish by positive enactment the law as already existing at the date of the act? Was it intended to change the common law in the particular under consideration?

The authorities cited would seem to warrant the con-

clusion, that by the terms "alienation by sale or otherwise," was intended a perfect alienation or conveyance of all the interest of the assured in the property covered by the policy, at least of all his insurable interest therein; that it was designed to prevent mere wager policies, and to secure to the insurers the advantage and protection which might reasonably be expected would be afforded, by the continuance of some interest in the property in the assured, and that it was not the design of the act, to render void the policy, so long as any insurable interest should remain in the assured; and unless some imperious necessity should appear for giving such construction to the act, it would seem unreasonable to hold, that a mere mortgage of the property would avoid the policy, while by the whole current of authorities the insurable interest of the mortgager in the mortgaged premises is holden to be equal to the whole value of the property mortgaged.

The authorities that have been referred to upon this question deserve consideration, as tending strongly to establish the proposition, that a mortgage of the property insured, after the date of the policy, does not impair the rights of the assured, notwithstanding the clause in the act that has been relied on by the trustees; and there are reasons for so holding. But the question may be left undecided, because whatever conclusion might be arrived at with regard to it, there remains another ground upon which the trustees must be discharged.

The policy was made to the Rogers, father and son, and to Head jointly. The two Rogers appear to have been partners, and upon the death of one his interest survived to the other. They were joint debtors likewise upon the security which is the subject of this suit. But in the contract with the New-Hampshire Mutual Fire Insurance Company, they were joined with Head, and apparently can not pursue their remedy upon the policy otherwise

than with him. This is elementary doctrine, and is founded upon reason.

The clear inference from it is, that the trustees can not be charged as such in an action in which Head is not joined as a party defendant, and so on the authorities.

In *Fiske* v. *Herrick*, 6 Mass. 271, it appeared that the trustee was not indebted to Herrick alone, but to Smith & Herrick, a firm; and it was held that the trustee was not chargeable.

So in *Upham* v. *Naylor & a.*, 9 Mass. 490, Lodge was summoned as the trustee of the defendants, and it appeared that he had in his hands the proceeds of goods consigned to him by two of the defendants and one Bathwaite. The trustee was discharged.

It would not be easy, perhaps it would be impossible in a proceeding like the present, to adjust the claims of the various parties so as to sever the interest of the principal defendant from the common interest of all the parties assured or the survivors. There is no reason to suppose that there has been any such severance by the parties themselves, and there seems no other course but to discharge the trustees. *Parker* v. *Guillow & Tr.*, 10 N. H. 104.

*Trustees discharged.*