THE TRADE INSURANCE COMPANY, PLAINTIFFS IN ERROR, v. THOMAS M. BARRACLIFF, DEFENDANT IN ERROR.

1. An exception to a refusal to non-suit a plaintiff at the trial after his evidence is in, which does not disclose the grounds of the motion, is not entitled to consideration on error.

2. Whether a plaintiff, after resting, shall be allowed to re-open his case and produce further testimony, is a matter addressed to the discretion of the trial court, whose action thereon cannot be reviewed by writ of error.

3. In a suit upon a policy of insurance, it is no defence that the plaintiff failed to pay when due a time note given to the insurer for the premium, there being nothing in the contract making actual payment a condition precedent to the validity of the policy, or default in payment a cause of forfeiture.

4. A husband, who, with his wife, is in the possession and enjoyment of her personalty, has an insurable interest therein.

5. A husband, who, with his wife, is in the occupation and enjoyment of her real estate, in which he has also an inchoate right of curtesy, has an insurable interest therein.

6. The amount to be recovered on a policy of fire insurance will depend not on the loss happening to the individual interest of the assured, but on the damage accruing to whatever interests are covered by the policy,

| | |
|---|---|
| 45 | 543 |
| 57 | 142 |
| 52e | 526 |
| 45 | 543 |
| 58 | 393 |
| 59 | 26 |
| 45 | 543 |
| 60 | 460 |
| 45 | 543 |
| e64 | 452 |
| 45 | 543 |
| 65 | 198 |
| 45 | 543 |
| 68 | 712 |
| 45 | 543 |
| 69 | 529 |
| 69 | 542 |

so far as the assured represents those interests, whether as his own or by the precedent authority or subsequent ratification of others.

7. A husband having, in his own name and with his wife's authority, insured real and personal property, situated as above mentioned, by a policy whose terms evinced an intention to insure the entire ownership, is entitled to recover for the whole loss not exceeding the amount insured.

8. The fact that the particular interest of the assured is not disclosed will not invalidate the contract, in the absence of express provision to that effect.

9. A policy insured two barns and certain articles "contained therein," and also a horse "in barn or in fields." *Held*, that the horse was insured, although in a barn not one of those specified.

On error to the Supreme Court.

For the plaintiff in error, *Benj. D. Shreve.*

For the defendants in error, *Wm. E. Potter.*

The opinion of the court was delivered by

DIXON, J.   Upon a policy of fire insurance issued by the defendant to the plaintiff this action was brought in the Supreme Court, tried in the Cumberland Circuit, where the plaintiff obtained a verdict, and removed by writ of error to this court.   The assignments of error relied on, all relate to exceptions taken at the trial.

The first exception was for the refusal of the trial judge to non-suit the plaintiff after his evidence was in.   This exception is not in such form as to call for our judgment upon the refusal.   The bill, after setting out the plaintiff's testimony, merely recites that the defendant moved for a non-suit, which the court refused, reserving its decision as to the questions raised.   What those questions were, or on what grounds the motion was based, the bill does not disclose.   Bills of exception should specify the grounds of objection upon which they are founded or they may be treated by the appellate court as nugatory.   *Donnelly* v. *State*, 2 *Dutcher* 463, 511.   A general objection is insufficient; the bill must show that the precise

point of which a review is sought was made by the counsel, presented to the mind of the court and decided before the bill was sealed. *Associates* v. *Davison*, 5 *Dutcher* 415, 418; *Allaire* v. *Allaire*, 10 *Vroom* 113. If a party could obtain the reversal of a judgment because of a refusal to non-suit, when he had not specified below the grounds of his motion, he might often prevail for reasons which, if stated at the trial, could readily have been obviated by the production of further evidence on behalf of the plaintiff. Such a practice should not be countenanced.

The second exception is for the permission given the plaintiff after resting to re-open his case and introduce additional testimony. This matter was wholly within the discretion of the trial judge. *State* v. *Fox*, 1 *Dutcher* 566, 602.

The third exception is to the exclusion of evidence offered by the defendant, to the effect that on the issuance of the policy the plaintiff gave the defendant his note at three months for the premium, that after he had failed to pay it he was told by the defendant's agent that if he did not pay it by a certain day the company would cancel the policy, and that he did not pay it by that day. This was excluded for the reason that it constituted no defence, the policy not having been, in fact, canceled, and the note not having been returned. This ruling was correct. The giving of the note formed a valid consideration to support the obligation of the company, and there is nothing in the terms of the policy to indicate that actual payment of the premium was made a condition precedent to the defendant's liability, or default in payment, a cause of forfeiture. The policy reserved to each party the right to cancel it, but as neither exercised the right, it remained in force. *Mc-Allister* v. *New England Ins. Co.*, 101 *Mass.* 558; *Trustees* v. *Brooklyn Ins. Co.*, 19 *N. Y.* 305.

The fourth exception is to the charge of the judge, that the plaintiff had an insurable interest in the property and could recover for the whole damage occasioned by the fire, not exceeding the amount of the insurance.

The property insured consisted of the buildings and stock

upon a farm whereon the plaintiff with his family resided. The title of the property, both real and personal, was vested in his wife, but he had the possession and enjoyment of it as the head of his household. The plaintiff and his wife had had living offspring of their marriage. The insurance was effected by the plaintiff with the authority of his wife, and the agent of the company who made the contract knew that the wife was the owner, at least of the realty. These are the facts upon which the validity of the exception is to be determined.

What constitutes an insurable interest is a subject which has received a great deal of judicial consideration, and which some text writers say is incapable of exact definition. It is certain, from a multitude of decisions, that an estate, either legal or equitable, is not essential to such an interest. Two or three cases may be cited as illustrative of this proposition.

In the leading and hotly contested cause of Crauford et al. v. Lucena, the matter was very thoroughly discussed by almost every judge at Westminster. The plaintiffs were commissioners appointed under 35 *Geo. III.*, c. 80, § 21, which authorized them to take into their possession Dutch ships and effects *detained in or brought into the ports of Great Britain,* and manage, sell or otherwise dispose of the same according to such instructions as they might receive from the Privy Council. When the commissioners took out the policy on which the action was brought, and when the loss (except of one ship) occurred, hostilities had not been commenced between Great Britain and the United Provinces, but they had become so probable that the English government had ordered its men-of-war to seize Dutch ships and bring them into English ports to await events. Accordingly several Dutch vessels had been taken, and had started from St. Helena for London, when the commissioners, without instructions from any one, procured this insurance against their loss "as well in their own names as for and in the name and names of all and every other person or persons to whom the same did or might appertain." The ships were lost before reaching England, and thereupon

the commissioners brought suit on the policy in their own names.

The first count of their declaration averred that they themselves were interested in the vessels and goods to the amount insured, and that the insurance had been made for their own use and benefit. The second averred the interest to have been in the king and the insurance on his account. At the trial Lord Kenyon directed a verdict for the plaintiffs on the first count as to all the ships, the reasons being those stated in the smilar case of *Crauford et al.* v. *Hunter*, 8 *T. R.* 13. The cause was then removed to the Exchequer Chamber, whose decision is reported in 3 *B. & P.* 74. There the judgment of the King's Bench was affirmed on the opinions of seven judges, Chambre, J., alone dissenting. Resort was then had to the House of Lords, where a large majority of the judges expressed the view that the plaintiffs had an insurable interest and should recover upon the first count, but Lord Eldon and Lord Ellenborough, thinking their insurable interest in one ship was ended by the declaration of hostilities before its loss, and Lord Erskine, thinking that the commissioners had no insurable interest at all, a reversal was adjudged by the house, and a *venire de novo* awarded, with a recommendation from the law lords that a recovery should be sought upon the second count, which averred an interest in the king, as the more tenable ground. 5 *B. & P.* 269. Upon a second trial before Lord Ellenborough such a recovery was obtained, and it was afterwards affirmed in the House of Lords. 1 *Taunt.* 325.

Now, upon this case it may be remarked that at the time of the insurance and of the loss, even the king had no title to the vessels, for, as Lord Eldon said, (5 *B. & P.* 319), " if a ship be taken by hostile force, the title to that ship, as against foreigners, cannot be changed by any act of local legislation, but the ship must be condemned in a court proceeding according to the law of nations on rules binding not only on the subjects of the country where the court is held, but on foreigners who are not so."

Nor was the crown in rightful possession, even, for the owners of the ships were not enemies, and the seizure was an

act of power merely, not of right.   Yet, because of the prob-
ability that the king's possession would become rightful by a,
declaration of war, and that he would become entitled, *jure*
*coronæ*, to the value of the vessels by a legal condemnation,
it was held that the king had an insurable interest in them at
the time of their loss, and that he was entitled to the full
amount insured.   It may be further remarked that the plain-
tiffs, who effected the insurance and successfully prosecuted
the suit, had never either possession or right to possession of
the ships, or any beneficial interest in them, or any express
authority to effect insurance on behalf of any person benefi-
cially interested, but were merely so situated that in the event
of the ships coming into a British port before war was de-
clared, they would be empowered to take possession and dis-
pose of them according to instructions; yet out of the proba-
bility that circumstances might occur which would call for the
exercise of this power, there were deduced an authority to
insure the king's interest, and a right to recover by suit in
their own names the sum insured.   Concerning an insurable
interest, Lawrence, J., who thought with Chambre, J., that
the commissioners had no such interest, nevertheless said, (5
*B. & P.* 301), (and his views have the approval of Black-
burn, J., in *Wilson* v. *Jones, L. R.*, 2 *Exch.* 139, 150,) "the
contract of insurance is applicable to protect men against
uncertain events which may in any wise, be of disadvantage
to them ; not only those persons to whom positive loss may
arise by such events, occasioning the deprivation of that which
they may possess, but those also who in consequence of such
events, may have intercepted from them the advantage or
profit which, but for such events, they would acquire accord-
ing to the ordinary and probable course of things."   *   *   *
" That a man must somehow or other be interested in the
subject matter exposed to perils, follows from the nature of
this contract,   *   *   *   but to confine it to the protection
of the interest which arises out of property, is adding a re-
striction to the contract which does not arise out of its nature."
Lord Eldon refers to an insurable interest as an intermediate

thing between a strict right or a right derived under a contract, and a mere expectation or hope. 5 *B. & P.* 321. Other excerpts from the opinions of the learned judges in this cause might readily be made, showing that an insurable interest is a much broader thing than title, either legal or equitable, but the judgment itself suffices. If it be said that this was a maritime insurance, it is also true that there is no distinction between marine and fire policies, as to the kind and degree of interest necessary to constitute the basis of the policy. *Phillips on Ins.,* § 346.

Other jurisdictions have adopted similar sentiments. In *Herkimer* v. *Rice,* 27 *N. Y.* 163, it was decided that an administrator of an insolvent estate had an insurable interest in the real property of his intestate, derived from his right to have the realty sold to pay debts, in case of insufficient personal assets. In *Hancox* v. *Fishing Ins. Co.,* 3 *Sumn.* 132, Judge Story said : " An insurable interest is *sui generis,* and peculiar in its texture and operation. It sometimes exists where there is not any present property, or *jus in re* or *jus ad rem.* Inchoate rights founded on subsisting titles, unless prohibited by the policy of the law, are insurable." And in *Hooper* v. *Robinson,* 98 *U. S.* 528, Justice Swayne said : " A right of property in a thing is not always indispensable to an insurable interest. Injury from its loss or benefit from its preservation to accrue to the assured, may be sufficient, and a contingent interest thus arising may be made the subject of a policy." But I need not multiply citations ; many others will be found collected in 2 *Am. L. Cas.* 797, in notes to *Lazarus* v. *Commonwealth Ins. Co.,* 19 *Pick.* 81. Mr. May, in his treatise on Insurance, (§ 80), draws from the cases the general principle that whoever may fairly be said to have a reasonable expectation of deriving pecuniary advantage from the preservation of the subject matter of insurance, whether that advantage enures to him personally or as the representative of the rights or interests of another, has an insurable interest.

In view of these doctrines, I think it is clear that in the case before us the plaintiff had an insurable interest in both

the personal and real property of his wife. Of the personalty, he had the actual possession and enjoyment, and also a reasonable expectation of the continuance of these pecuniary advantages as lawful incidents of his wife's ownership and his marital relations with her. His interest was such that, even in criminal pleading, framed to convict one of the larceny of the goods, he might be described as their owner. *Petre* v. *State*, 6 *Vroom* 64. In the realty he had not only these same benefits, but also an inchoate right of curtesy. He was not, indeed, tenant by the curtesy initiate, since the act of 1852 prevented his acquisition of that estate, (*Porch* v. *Fries*, 3 *C. E. Green* 204), but by the birth of offspring he had obtained an inchoate right which, on his wife's death, he surviving, would bloom into a freehold. *Ross* v. *Adams*, 4 *Dutcher* 160. Such present benefits, coupled with such prospective rights, come easily within the definition of an insurable interest. Accordingly, when we seek for adjudications on these very points, we find them almost uniformly supporting the right to insure. Thus, in *Goulstine* v. *Royal Ins. Co.*, 1 *F. & F.* 276, Chief Baron Pollock ruled that a husband had an insurable interest in goods settled to his wife's separate use, but in their joint possession as the furniture of their home, and could recover for their loss under a policy issued to himself alone. In *Clark et ux.* v. *Fireman's Ins. Co*, 18 *La.* 431, it was decided that a policy taken out by the husband on furniture belonging to his wife, but used in their dwelling, was valid. In *Cohn* v. *Virginia Ins. Co.*, 3 *Hughes* (*C. Ct.*) 272, the husband's right of using his wife's goods was said to be an insurable interest, although a verdict for the plaintiff was set aside for want of a proper description of that interest in the policy and declaration. An opposite view seems to have been entertained in *Agricultural Ins. Co.* v. *Montague*, 38 *Mich.* 548, where the husband had procured insurance on his wife's silverware; but the report does not indicate whether the husband had any possession or use of the property, and the decision rested on the invalidity of the policy, because the wife's title was not set out in the policy, as the contract re-

quired.  So as to the wife's realty.  In *Franklin Ins. Co.* v.
*Drake,* 2 *B. Mon.* 47, the husband was substantially a tenant
by the curtesy initiate of his wife's lands, and it was held that
he had an insurable interest, and that, having such interest, he
was entitled to recover the whole value of the property de-
stroyed, without regard to the value of his personal interest,
the court saying that the amount of recovery depends on the
interest intended to be insured.  In *Merrett* v. *Farmers' Ins.
Co.,* 42 *Iowa* 11, a husband had taken out a policy in his own
name on ˙a building erected by his wife before ˙marriage, on
land in which she had only a life estate, but which was used
by both as a homestead, and it was held that he had an in-
surable interest by reason of his possession, and that he could
recover for the whole damage, because the policy, by providing
that the amount of loss was to be estimated according to the
actual cash value of the property at the time of the loss, indi-
cated that the insurance was intended to cover the entire
injury.  The court said : " If the holder has an insurable in-
terest, no inquiry is made as to the value of that interest,
*   *   *   to limit the obligation of the underwriters.  The
rule may be different in the case of mortgagees and lienhold-
ers."  In *Harris* v. *York Mut. Ins. Co.,* 50 *Penna. St.* 341,
the husband's interest was precisely like that of the present
plaintiff; he had an inchoate right of curtesy and was in occu-
pation of the building insured as the dwelling of himself and
wife.  The policy and the action were in his own name, and
they were sustained, both because of his own interest and
because of his implied agency for his wife; Woodward, C. J.,
saying on this latter point: " When a husband has effected an
insurance on houses in the joint possession of himself and wife,
but which belong to her, the law will presume her ratification
of his act, if not her precedent authority to perform it, and
will support the insurance for her benefit."  To like effect are
*Mut. Ins. Co.* v. *Deale,* 18˙ *Md.* 26, and *American Cent. Ins.
Co.* v. *McLanathan,* 11 *Kans.* 533, and Mr. Phillips ap-
proves the doctrine that a husband having a right to tenancy
by the curtesy in the event of his surviving his wife, has an
insurable interest in her real estate.  *Phillips on Ins* , § 350.

Having thus, then, concluded that the plaintiff had an insurable interest at the making of the contract and at the time of the loss, the next question is as to the amount of recovery. And on this point it will not be necessary to go so far as some of the cases already cited, and say that no inquiry into the interest of the assured will be permitted; but I think this principle may be justly laid down that the amount to be recovered will depend, not on the loss happening to the individual interest of the assured, but on the damage accruing to whatever interests are covered by the policy, so far as the assured represents those interests, whether as his own or by the precedent authority or subsequent ratification of others. On this notion rest all the cases enforcing insurance effected by consignees, factors and other bailees and agents, to the full amount of the loss. It supports, too, the judgments in most of the cases already cited. It finds a notable illustration in *Waring* v. *Indemnity Ins. Co.*, 45 *N. Y.* 606, where the plaintiffs had taken out a floating policy insuring themselves against loss by fire on goods "sold but not removed," and it was held that they could recover the full amount of the insurance, although when the fire occurred the property had been sold and completely delivered by the plaintiffs, and their responsibility terminated, but the goods had not been removed by the vendees from the place of storage. The description in the policy embraced the goods destroyed, and the plaintiffs recovered for the benefit of their vendees. See, also, *Strong* v. *Manuf. Ins. Co.*, 10 *Pick.* 40, and *Marts* v. *Cumberland Ins. Co.*, 15 *Vroom* 478.

In the case before us there is no doubt that the plaintiff represented his wife's interest as well as his own, and that he intended to effect this insurance on behalf of both, and that such intention was known to the underwriters. This fact of representation is not, indeed, expressly stated in the policy, but it is no part of the law either of contracts or of evidence, that the principal shall be disclosed on the face of the writing. In *Insurance Company* v. *Chase*, 5 *Wall.* 509, the assured was

only one of five trustees of a Congregational church in Portland, and the policy insuring the church edifice was issued to him as if he had been personally the absolute owner in fee; the company contended that the policy could cover only his individual interest, or, at the furthest, the fractional interest which he had as trustee. But the court held that the plaintiff, having insured the building with the assent of his cotrustees and for the benefit of the *cestuis que trustent*, the company could not complain that the character of the interest was not incorporated in the policy and must pay the whole loss.

The policy now under consideration clearly indicates a design to have the insurance cover the entire ownership. This would be inferred, at least for the purpose of supporting the contract, from the fact that no particular interest is mentioned as the subject matter of the insurance, but it more expressly appears in the clause which provides for estimating the amount of loss or damage, according to the actual value of the insured property at the time of the fire, in that which requires the proof of loss to set forth the value of the property insured and the interest of the assured therein, and in that which gives to the company an option of replacing the property burned with other of the same kind and goodness. These expressions show that the property insured was not necessarily the interest of the assured alone. *Waters* v. *Assurance Co.*, 5 E. & B. 870; *Merrett* v. *Farmers' Ins. Co.*, 42 *Iowa* 11.

But on this very interpretation of the policy the company bases another exception to the rulings of the trial judge, viz., his refusal to charge that the policy was invalidated by force of one of its conditions, that it should be void "if any material fact or circumstance stated in writing has not been fairly represented by the assured." The company claims that the designation of the property as "his," the plaintiff's, contained in the policy, is such written statement, and is false. There are two answers to this claim: First, that the contract does not require the interest of the assured to be specifically set forth, and therefore the mere fact that it was not disclosed

would not avoid the policy, and it was enough that he had an insurable interest. *Insurance Co.* v. *Woodruff*, 2 *Dutcher* 541; *Franklin Ins. Co.* v. *Martin*, 11 *Vroom* 568; *May on Insurance*, § 284. And, secondly, we think the statement referred to must have been one made by the assured in writing before the issuing of the policy, and none such was made. This exception, therefore, also fails.

Another exception was taken to the charge that recovery might be had for a horse insured " in barn or in fields," and destroyed in a barn built on the farm after the policy was issued. The insurance covered (*inter alia*) two barns and some personal effects " contained therein," and the defendant insisted that the phrase " in barn or in fields " refers to these barns only. But this, we think, is too restrictive. The phrase itself is a general one, and clearly indicates that the horse was insured if housed anywhere on the farm.

One other exception appears upon the record. The policy provided that it should become void if, without the written assent of the company, the situation or circumstances affecting the risk should, by or with the advice, agency or consent of the insured, be so altered as to cause an increase of such risk. The evidence was that after the policy was taken out, a small stable was erected about fifteen feet from one of the barns insured, and was burned with the insured buildings. The judge charged that there was nothing in the case upon which to ground a verdict that there had been an increase of risk, and the defendant excepted. Perhaps the testimony raised a question for the jury to decide; inasmuch, however, as the defendant did not ask to have the matter submitted to the jury, but instead asked to have the judge charge that the risk was increased, and inasmuch as the point was not suggested in argument before this court, and therefore may be considered as abandoned, we hold that this exception ought not to be allowed to disturb the verdict.

The judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, KNAPP, SCUD-DER, CLEMENT, COLE, KIRK, PATERSON, WHITAKER.   9.

*For reversal*—THE CHIEF JUSTICE, DEPUE, MAGIE, GREEN.   4.