P. R. DE BELLIS ENTERPRISES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. LUMBERMEN'S MUTUAL CASUALTY COMPANY, AN ILLINOIS CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-RESPONDENT.

Argued April 24, 1978—Decided August 8, 1978.

*Mr. Aaron Dines* argued the cause for appellant (*Messrs. Lordi, Imperial and Dines,* attorneys).

*Mr. Allan Maitlin* argued the cause for respondent (*Messrs. Feuerstein, Sachs and Maitlin,* attorneys).

The opinion of the court was delivered by

SCHREIBER, J. Plaintiff P. R. DeBellis Enterprises, Inc. had purchased a fire insurance policy covering a certain building in Caldwell and instituted this action to collect under that policy when the building was destroyed by a fire. Plaintiff's entitlement to recovery depends on whether it had an insurable interest in the property and, if so, the extent, if any, of its loss.

The trial record consisted of exhibits and the deposition of Paul DeBellis, the owner and president of plaintiff corporation. A virtually undisputed factual picture emerged. On April 19, 1974 the Internal Revenue Service (IRS), possessing a lien on the land and building designated as 271 Bloomfield Ave., Caldwell, conducted an auction to sell the property. The sale was subject to approximately $145,000 of prior liens, one of which exceeded $35,000 for municipal real estate taxes. Plaintiff was the successful bidder at $5,000 and paid a $1,000 deposit. Mr. DeBellis testified that he hoped to be able to shave the amounts due on some of the liens, but, if necessary, he was prepared to pay the full sums.

Upon payment of the balance of the purchase price on May 7, 1974, IRS delivered to plaintiff a Certificate of Sale of Seized Property. The certificate described the real property sold by metes and bounds. All right, title and interest of the prior owners, Parker and Edna Teed, in personal property such as chairs, tables, kitchen equipment, bars and others accessories were transferred to plaintiff. As to the real property, the certificate recited that if the Teeds did not redeem the property within 120 days after the tax sale on April 19, 1974, a quitclaim deed would be issued to plaintiff upon surrender of the certificate. The redemption price was fixed at the amount paid by plaintiff with interest at the rate of 20% per annum.

Plaintiff took possession upon receipt of the certificate. Plaintiff planned to convert the structure for offices. Utilities were put in its name; contractors surveyed the premises; and

prospective tenants visited the building. Plaintiff also purchased a multi-peril insurance policy from defendant for a three-year period commencing May 9, 1974 at a total premium cost of $1,413. The policy afforded public liability and fire insurance protection. The building was insured against direct loss by fire to a limit of $160,000. The amount to be paid was limited "to the extent of the actual cash value of the property at the time of loss" not exceeding the cost of repair or replacement, "nor in any event for more than the interest of the insured." Of the premium cost $1,077 was ascribable to this coverage.

On July 14, 1974 the building was destroyed by fire. By letter dated July 18, 1974, Parker Teed elected to redeem the property and tendered a certified check to plaintiff for $5,264.10, which represented the plaintiff's purchase price of $5,000 plus interest at the rate of 20% per annum for 95 days (April 19 through July 19). Thereupon plaintiff's interest in the property terminated.

Plaintiff instituted this action to compel defendant to pay it for the damage to the building in accordance with terms of the policy. At trial the issues were generally limited to plaintiff's insurable interest and its loss, if any, under the policy. The trial court, after commenting that "quite obviously there is no taint in the transaction," found that the certificate was more like a mortgage than a deed, for the buyer had acquired some of the federal government's lien. The trial court believed the loss should be fixed as of the date of the fire and in its view plaintiff's loss was $5,000 plus premiums representing the difference between cost of insurance for $5,000 and $160,000. However, the trial court considered itself bound by the decision of *Flint Frozen Foods, Inc. v. Firemen's Insurance Co.*, 8 *N. J.* 606 (1952), in which recovery was disallowed on a fire policy issued to a creditor covering a debtor's property, when, after a fire destroyed that property, the indebtedness was paid. For that reason judgment was entered for the defendant.

The Appellate Division, questioning whether *Flint* represents a sound economic or insurance result, acknowledged it was bound by *Flint* and affirmed. 153 *N. J. Super.* 94 (1977). We granted plaintiff's petition for certification. 75 *N. J.* 592 (1977).

No one can seriously quarrel with the proposition that plaintiff had an insurable interest in the property when it purchased the policy and at the time of the fire. This is so irrespective of whether plaintiff is considered an owner of or has a creditor type interest in the realty. In *Flint* this Court held:

A mortgagee, pledgee or other person having merely a security interest or having less than complete ownership in the property may now safely take out a fire insurance policy in his own name covering the property in which he has an interest, without his claim on the policy being defeated by the existence of other interests in the insured property. [8 *N. J.* at 612]

See also *Kozlowski v. Pavonia Fire Insurance Co.*, 116 *N. J. L.* 194, 199 (E. & A. 1936) (equitable interest); *Trade Insurance Co. v. Barracliff*, 45 *N. J. L.* 543, 550 (E. & A. 1883) (husband's right of curtesy); *Franklin Fire Insurance Co. v. Martin*, 40 *N. J. L.* 568, 571 (E. & A. 1878) (contract vendee in possession); *Sussex County Mutual Insurance Co. v. Woodruff*, 26 *N. J. L.* 541, 549–550 (E. & A. 1857) (mortgagee); *Wiley v. Morris*, 39 *N. J. Eq.* 97, 102 (Ch. 1884) (trustee's interest). See generally *W. Vance, Handbook on the Law of Insurance* at 161–179 (3d ed. 1951).

The Appellate Division analogized plaintiff's interest under the certificate to that of the holder of a tax sale certificate under state law, that is, one who holds an inchoate right or interest in the land which does not ripen into ownership until the right of redemption ceases. See *Gasorek v. Gruber*, 126 *N. J. Super.* 511, 515 (App. Div. 1974); *Newark v. Sue Corp.*, 124 *N. J. Super.* 5, 7 (App. Div. 1973); *Manning v. Kasdin*, 97 *N. J. Super.* 406, 417 (App. Div. 1967), certif. den. 51 *N. J.* 182 (1968). Such an inter-

est is an insurable one. 4 *Appleman, Insurance Law and Practice* § 2184 at 99, n. 60.25 (1969) (holder of certificate in possession). However, the purchaser's interest here under the federal certificate was even more significant, for it included the additional attributes of a right to immediate possession of realty and to the prior owner's title in personal property. *Cf. Brewer v. Porch,* 53 *N. J.* 167, 178–179 (1969) (buyer of a state tax sale certificate has no right to immediate possession).

Turning to the insurance policy in question, we find that the parties agreed that defendant's liability would not exceed "in any event * * * more than the interest of the insured." This proviso was inserted to comply with *N. J. S. A.* 17:36–5.19, which requires that each fire insurance policy contain this condition. No statutory history enlightens us on when, how and in what manner the insured's interest is to be fixed.

Our recent case law reflects the dichotomy which exists throughout the country in ascertaining the interest of the insured. In *Flint* the plaintiff's creditor was owed approximately $13,500. The creditor held warehouse receipts on groceries which were in storage as security for the indebtedness. The creditor purchased a fire insurance policy from the defendant to cover the stored merchandise. The debt had been reduced to roughly $5,000 when a fire destroyed the groceries. The plaintiff then paid the balance of the debt and the creditor assigned the policy proceeds to the plaintiff. The defendant's refusal to pay was sustained. Following the principle that a fire insurance policy is a contract of indemnity, the court reasoned that there could be no recovery because the insured suffered no loss. 8 *N. J.* at 610. The *Flint* case represents the minority view. See also *Ramsdell v. Insurance Co. of North America,* 197 *Wis.* 136, 221 *N. W.* 654 (Sup. Ct. 1928); *Glens Falls Insurance Co. v. Sterling,* 219 *Md.* 217, 148 *A.* 2d 453 (Ct. App. 1959).

The majority viewpoint expressed in *Wolf v. Home Insurance Co.,* 100 *N. J. Super.* 27 (Law Div.), aff'd o.b. 103 *N. J. Super.* 357 (App. Div. 1968), holds that the insured's interest is to be fixed at the time of the casualty. There plaintiff had a fire insurance policy on his home, which he vacated when the State contracted to purchase it. The home was destroyed by fire and plaintiff demanded payment from the defendant insurance company, even though the State took title without any diminution in the purchase price. After making an in-depth analysis of the cases, Judge J. Stamler held that the interest of the insured should be ascertained at the time of the fire, a finding consonant with other policy provisions requiring submission of immediate written notice of a loss and filing of a proof of claim within 60 days after the loss. He envisioned no reason to benefit the insurance company because the plaintiff owner profited from some collateral sources.

*Wolf* epitomizes the majority viewpoint and adheres to the position expressed in the leading case of *Foley v. Manufacturers' & Builders' Fire Insurance Co.,* 152 *N. Y.* 131, 46 *N. E.* 318 (Ct. App. 1897), where the owner of a house under construction destroyed by fire was permitted to collect the proceeds under a policy, even though no loss was suffered because the contractor reconstructed the home. The court reasoned:

The defendant, by its contract, undertook to insure the plaintiffs against loss by fire * * *. The parties by this contract made the value of the property insured, within the limit, the measure of the insurer's liability * * *. [T]he contract relations between the plaintiffs and the contractors is a matter in which the defendant has no concern. [152 *N. Y.* at 134–135, 46 *N. E.* at 319]

See also *Kintzel v. Wheatland Mutual Insurance Ass'n,* 203 *N. W.* 2d 799, 807–811 (Iowa Sup. Ct. 1973) (citing cases).

*Wolf* attempted to distinguish *Flint* on the basis that the plaintiff in *Flint* had been the owner of the groceries, whereas the insurance policy did not purport to insure an ownership

interest. 100 *N. J. Super.* at 40. The distinction is not sound. The basic holding in *Flint* was that the fire insurance policy was a contract of indemnity, so that an assured had to incur an actual loss before being entitled to recover on the policy. *Wolf*, on the other hand, rejected this premise and relied on the literal contractual language. Neither view is totally satisfactory.

We, of course, must begin with the statutory language which, as noted above, does not specify when or how the interest of the insured is to be ascertained. We have previously held that the general contract principle, that ambiguities are to be resolved against the insurer as the party who prepared the contract, has no application to the parts of a standard fire insurance policy which have been drafted by the Legislature. *Herbert L. Farkas Co. v. N. Y. Fire Insurance Co.,* 5 *N. J.* 604, 610–611 (1950). Though the Legislature has not expressed a purpose, presumably it intended to further the traditional policies in insurance law of preventing fraud and speculation. Within those confines we are satisfied that the Legislature intended that coverage would depend upon the reasonable expectation of the insured.[1] See *Harr v. Allstate Insurance Co.,* 54 *N. J.* 287, 303–304 (1969); *Kievit v. Loyal Protective Life Insurance Co.,* 34 *N. J.* 475, 482 (1961). That being the key criterion, the amount of recovery may not necessarily be limited to the precise situation of the insured as of the date of the casualty and subsequent events may be significant in determining the insured's interest.

For example, the parties here undoubtedly contemplated payment by defendant of the full amount of the loss if no redemption had occurred within the 120-day period. The

---

[1]Some courts have construed "standard policies and provisions not as legislative enactments but as voluntary contracts and give[n] to the insured and beneficiary the benefit of the doubt where there is ambiguity." *W. Vance, Handbook on the Law of Insurance, supra* at 810 (footnote omitted).

plaintiff probably did not expect redemption if the premises were destroyed by fire. It placed a value of $160,000 on the building, paid a premium on that basis and obtained coverage for a three-year period. Mr. DeBellis believed that at the time of the loss he "was the owner of record" of the building and he fully expected that the owership would become complete.

Plaintiff's failure to disclose in the application for the policy its precise interest as evidenced by the Certificate of Sale of Seized Property cannot be condemned as fraudulent or due to bad faith. The defendant conceded as much at the outset of the trial when it dropped pretrial order defenses predicated upon fraud, misrepresentation and concealment. This concession was made probably because the defendant had been willing to insure the building and had been willing to issue a policy to the plaintiff. There was no evidence of plaintiff's bad faith or fraud. At most disclosure of plaintiff's specific interest in the property related only to the amount of the risk. Therefore, there can be no doubt that defendant had an exposure at least to that extent. So even assuming redemption, the defendant had contemplated that plaintiff would be entitled to at least the value of the interest it held on the day of the fire. Defendant had accepted a premium for an exposure of a far greater amount. Defendant had contracted to incur its obligation without knowledge of the existence of the holder of the redemption interest and in any event with no assurance that redemption would occur. In fact, one would have thought that destruction of the premises would have made redemption even more unlikely. The contention that redemption, subsequent to the casualty, made the plaintiff whole and therefore recovery should be denied overlooks the underlying insurance contract under which the defendant agreed for a premium to pay plaintiff the actual cash value of the property. To deny any recovery would create a windfall for the insurance company and ignore

what we conceive to be the reasonable expectation of the parties.[2]

However, the burden was on the plaintiff to establish the value of that interest in the event of redemption. It made no showing of any special or other value of that interest other than the purchase price. It is fair to presume that the value was equivalent to at least the amount expended for that interest some three months before the fire. Accordingly, judgment should be entered in favor of plaintiff in that amount, plus interest at the rate of 20% per annum to the date of the fire. In addition, plaintiff is entitled to a partial return of premium, its interest in the property having been severed on July 19, 1974. Determination of that amount shall be made by the trial court, both parties being entitled to introduce relevant evidence on that issue.

Reversed and remanded for further proceedings in accordance with this opinion.

---

[2]Our holding does not foreclose the possibility that the ultimate beneficiary of a fire insurance policy's proceeds may be someone other than the named insured. It has been held that a contract purchaser may be entitled to the proceeds of a fire policy purchased by the seller. See Annot., "Rights of vendor and purchaser, as between themselves, in insurance proceeds," 64 *A. L. R.* 2d 1402 (1959). See also *Wolf v. Home Ins. Co.*, *supra*, 100 *N. J. Super.* at 32–36; Vance, "Vendee's Claim to Insurance Money Received by Vendor," 34 *Yale L. J.* 87 (1924) ; J. Cribbet, *Principles of the Law of Property* 156–162 (2d ed. 1975). In *Millville Aerie v. Weatherby*, 82 *N. J. Eq.* 455, 457 (Ch. 1913), the court wrote:

As purchaser under a valid contract of purchase vendee became the equitable owner of the property; in equity the property is regarded as belonging to him, the vendor retaining the legal title simply as trustee and as security for the unpaid purchase-money. By reason of this equitable relation of the parties to a contract of sale of land it has been determined by the great weight of American authority that money accruing on a policy of insurance, where the loss has occurred subsequent to the execution of the contract, will, in equity, inure to the benefit of the vendee; the vendor still retaining his character as trustee, and the insurance money in his hands representing the property that had been destroyed.

*For reversal and remandment*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance*—None.