ALFONSO R. MILLER AND JEROME ROSENBERG, PLAINTIFFS-APPELLANTS, v. NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-RESPONDENT. ELIJAH NORWOOD AND THELMA NORWOOD, LILLIAN GILBERT AND MAURICE GILBERT, PLAINTIFFS-APPELLANTS, v. NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-RESPONDENT.

Argued January 7, 1980—Decided June 3, 1980.

*Abraham I. Mayer* argued the cause for appellants (*Mayer and Mayer*, attorneys).

*Peter M. Burke* argued the cause for respondent (*Young, Rose & Millspaugh*, attorneys; *Frederick W. Rose*, on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

The issue presented on these consolidated appeals is whether an *in rem* judgment of foreclosure for unpaid real estate taxes deprives the former owners and mortgagees of an insurable interest in the real estate, so that an insurer need not pay under a fire insurance policy when a structure on the real estate is damaged. The trial court granted summary judgment in favor of the insurer, and the Appellate Division affirmed in an unreported opinion, with one judge dissenting. We now reverse and remand for a trial in accordance with this opinion.

These matters involve separate properties in the City of Newark that were damaged by fire after Newark foreclosed real estate tax sale certificates affecting the properties. The New Jersey Insurance Underwriting Association (NJIUA) is an association created by statute to provide fire insurance, particularly in central city areas, to persons who cannot obtain insurance in the normal insurance market. *N.J.S.A.* 17:37A–1 *et seq.*

The material facts pertaining to the two properties are substantially identical. With respect to the property at 226 Springfield Avenue, Newark purchased a tax sale certificate on December 4, 1972, which was recorded on April 10, 1973. On June 1, 1973, Alphonso R. Miller purchased from Jerome and Della Rosenberg the stock of Harmitch Corporation, the record owner of the property. Under the terms of the sale, Miller agreed to

issue to Della Rosenberg a note and second mortgage on his home in Newark. In the contract, Miller assumed the responsibility for paying taxes on the property. The contract provided that a second property formerly owned by Harmitch Corporation was "owned by, or in the process of having title thereto taken by, the City of Newark." There was no similar reference to the property at 226 Springfield Avenue. Before the purchase, Miller, as a tenant of the Rosenbergs, conducted a furniture and appliance business; after the closing, he continued that business and collected rent from some tenants of the premises.

Miller applied to NJIUA for fire insurance on December 2, 1974. Miller listed himself as owner (although the owner apparently was Harmitch Corporation) and plaintiff Jerome Rosenberg as mortgagee (although nothing in the record, other than the insurance application, indicates he held a mortgage on 226 Springfield Avenue). However, the casual, even careless, business practices of the parties are not relevant on this appeal.

The right to redeem the property from the tax sale certificate expired on December 4, 1974, two years after the date of the tax sale. The period for redemption has since been reduced from two years to six months. *N.J.S.A.* 54:5–54. On December 10, 1974, NJIUA issued a fire policy for $30,000 insuring Miller as owner and Rosenberg as mortgagee.

On September 30, 1975, Newark obtained a judgment foreclosing the tax sale certificate. About three weeks later, on October 21, 1975, fire seriously damaged the building. As title holder, Miller submitted a proof of loss in the amount of $18,323.50, an amount that NJIUA subsequently agreed represented the damage to the property. On December 31, 1975, NJIUA advised Miller that it had just learned of the entry of the judgment of foreclosure and that it would not make payment because Miller had no insurable interest.

Miller and Rosenberg claim that they did not receive notice of the proceedings before entry of the judgment of foreclosure, and that their first notice was NJIUA's letter denying payment. At

oral argument, NJIUA contended that, on remand, it could prove that Newark had mailed actual notice of the foreclosure to Miller. After the foreclosure, Newark wrote to Miller stating that it would vacate the judgment in exchange for payment in full or by installments of unpaid real estate taxes.

The other appeal concerns property located at 584 Springfield Avenue in Newark. Plaintiffs Elijah and Thelma Norwood acquired title to the property on May 11, 1973. Newark purchased a tax sale certificate for the property on December 19, 1974. The redemption period expired on June 19, 1975, under *N.J.S.A.* 54:5–54, as amended. NJIUA issued a fire policy on July 25, 1976, showing the Norwoods as insureds, plaintiffs Lillian and Maurice Gilbert as mortgagees, and others not parties to this proceeding as having an interest in the property. On September 29, 1976, Newark recorded its judgment of foreclosure. Thereafter, on May 30, 1977, the premises were destroyed by fire. Norwood and Gilbert assert they did not receive notice of the foreclosure and claim the amount of the policy, $20,000.

As with the Miller property, NJIUA has refused to pay under the policy because of the entry of the judgment of foreclosure before the fire. Except for the judgments of foreclosure, NJIUA acknowledges that plaintiffs would have had insurable interests in their properties. NJIUA does not dispute that plaintiffs had insurable interests at the time of the issuance of the policies. Furthermore, NJIUA does not claim that plaintiffs are guilty of bad faith or fraud. Newark is not a party and makes no claim for any part of the proceeds of the insurance concerning either the Miller or Norwood properties.

Since these appeals are before us on NJIUA's motions for summary judgment, we must resolve all reasonable inferences in favor of plaintiffs. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 75 (1954). Therefore, for the purposes of this decision, we assume that plaintiffs did not receive actual notice of the foreclosure proceedings.

■ Our initial inquiry concerns the impact on this case of our decision in *Township of Montville v. Block 69, Lot 10,* 74 *N.J.* 1 (1977). In *Montville,* this Court held that where a municipality has a landowner's name and address notice by publication only in an *in rem* tax foreclosure proceeding violates the due process provisions of the United States and New Jersey Constitutions. 74 *N.J.* at 15–19. To avoid upsetting established titles, the Court held further that the *Montville* decision should be applied prospectively. That is, except for tax foreclosure proceedings completed before the *Montville* decision, a municipality must mail notice to an owner before his right of redemption may be barred. 74 *N.J.* at 20.

NJIUA contends that, since the foreclosure proceedings in this case were completed before the decision in *Montville,* the owners may not challenge Newark's title to the insured premises.

The trial court found that plaintiffs had no insurable interest and granted summary judgment for NJIUA. The majority of the Appellate Division affirmed, applying *Montville* prospectively. The majority reasoned that at the time of the fires legal title to both properties was in Newark and, therefore, plaintiffs did not have insurable interests.

■ The dissent began by recognizing that the prospective operation of *Montville* prevented Miller and Norwood from attacking Newark's previously acquired title to their properties. Nonetheless, by recourse to that part of *Montville* declaring tax foreclosures without actual notice to be unconstitutional, the dissent stated Miller and Norwood retained title as against NJIUA. Having made that finding, the dissent concluded plaintiffs had insurable interests in their properties. We do not agree that it is necessary to find title in Miller and Norwood to find that they had insurable interests. We hold that Miller and Norwood retained insurable interests in their properties although they had lost title to their properties. We conclude that, as a matter of law, an owner who lost title to real estate in an *in*

*rem* tax sale foreclosure before *Montville* is not necessarily deprived of an insurable interest in that property.

■ To sustain recovery, an insured under a fire insurance policy must have an insurable interest in the property at the time of the loss. R. Keeton, *Insurance Law* § 3.3(c) (1971); 4 J. Appleman, *Insurance Law and Practice* § 2122 (1969). *See, e. g., Hyman v. Sun Ins. Co.*, 70 *N.J.Super.* 96, 99 (App.Div.1961) (assignee of mortgage payment has insurable interest in mortgagee's property in the amount of the payment due). The justification for this rule is the discouragement of illicit uses of insurance, such as wagering, and the destruction of insured property. *See generally* Keeton, *supra* at §§ 3.3(a), 3.4(b); Appleman, *supra* at § 2121. The recurring problem is determining when an insurable interest exists. Nearly a century ago, the Court of Errors and Appeals in *Trade Ins. Co. v. Barracliff*, 45 *N.J.L.* 543, 546 (E. & A.1883), declared, "What constitutes an insurable interest is a subject which has received a great deal of judicial consideration, and which some text writers say is incapable of exact definition." The problem of defining an insurable interest continues and is the central issue in this case.

■ With respect to real estate, an insurable interest need not rise to the level of legal or equitable title. In the past, New Jersey courts have recognized that an insured retains an insurable interest as long as he has a reasonable expectation of deriving pecuniary benefit from the preservation of the property or would suffer a direct pecuniary loss from its destruction. *See Barracliff, supra*, 45 *N.J.L.* at 549–551 (husband has insurable interest in property owned by wife); *Kozlowski v. Pavonia Fire Ins. Co.*, 116 *N.J.L.* 194, 199 (E. & A.1936) (unmarried immigrant couple allowed to recover for damage to dwelling house although only woman shown as owner); *Franklin Fire Ins. Co. v. Martin*, 40 *N.J.L.* 568, 572 (E. & A.1878) (buyer in possession under contract for sale has insurable interest before title pass-

es); *Sussex County Mutual Ins. Co. v. Woodruff*, 26 *N.J.L.* 541, 550–551 (E. & A.1857) (assignee of mortgage held as collateral has insurable interest in factory covered by mortgage); *Hyman v. Sun Ins. Co., supra*, 70 *N.J.Super.* at 100. *See generally Wolf v. Home Ins. Co.*, 100 *N.J.Super.* 27 (Law Div.1968), aff'd o.b. 103 *N.J.Super.* 357 (App.Div.1968). In *Wolf*, fire damaged an apartment house. Before the fire, in lieu of condemnation, the owner had agreed to sell the property and had transferred possession to the State; following the fire, the owner received the full purchase price from the State. Nonetheless, the court held that the owner had an insurable interest at the time of the fire.

Courts have differed in assessing the rights of an insured who has less than legal title at the time of a fire or who attempts to insure a possessory or expectancy interest less than complete title. *See generally* Keeton, *supra* at § 3.4(b). Compare *Franklin Fire Ins. Co. v. Martin, supra*, 40 *N.J.L.* 568 (possession of premises under contract of purchase is equivalent to full title in equity) and *Smith v. Eagle Star Ins. Co.*, 370 *S.W.*2d 448 (Tex.1963) (insured who had possession of real property and dwelling house for 20 years had insurable interest in house although property was owned by the state) with *Lumbermen's Mutual Ins. Co. v. Edmister*, 412 *F.*2d 351 (8th Cir. 1969) (former owner remaining in possession may have insurable interest, but insured must show facts establishing actual pecuniary loss recoverable under policy) and *Wreidt v. Beckenhauer*, 183 *Neb.* 311, 159 *N.W.*2d 822 (1968) (former owners remaining in possession had no insurable interest because "entire interest" had been conveyed).

The definitive case in New Jersey is *P.R. DeBellis v. Lumbermen's Mutual Casualty Co.*, 77 *N.J.* 428 (1978). In *DeBellis*, this Court formulated a rule that analyzed insurable interest in terms of the reasonable expectations of the insured. There, plaintiff purchased a tax sale certificate for unpaid federal taxes affecting land and a building. While the former owner

still had a right of redemption, plaintiff took possession of the premises, put the utilities in his name, arranged for a survey, and allowed prospective tenants to visit the building. After a fire destroyed the premises, the former owner redeemed the property. The Court held that plaintiff's interest was insurable. 77 *N.J.* at 433–434. The extent of coverage would be measured by the "reasonable expectations of the insured," taking account of events subsequent to the time of the loss. *Id.* at 436. Plaintiff was allowed to recover the value of his possessory interest on the date of the casualty, subject to the right of redemption. That interest was valued at the price the insured paid for the property, plus interest. *Id.* at 437–438.

In *DeBellis*, the insured was the holder of a tax sale certificate; here, the insureds are former record owners whose equities of redemption had been foreclosed before they sustained fire damage. Notwithstanding these factual differences, the holding of *DeBellis* controls the present cases.

After the foreclosure proceedings, Miller and Norwood continued to occupy their respective premises, and Miller continued to operate his furniture business and collect rents at 226 Springfield Avenue. From their perspective, they could reasonably believe that their fire insurance policies protected them from losses they might suffer upon destruction of their premises. Their continuing possession left plaintiffs with insurable interests of value. Miller and Norwood did not lose all reasonable expectations concerning their properties merely because they lost title to them. To deny recovery "would create a windfall for the insurance company and ignore what we conceive to be the reasonable expectations of the parties." *DeBellis, supra,* at 437–438.

On remand, plaintiffs should be allowed to show the pecuniary value of their interests. *Womble v. Dubuque Fire & Marine Ins. Co.,* 310 *Mass.* 142, 37 *N.E.2d* 263 (1941) (insureds, trustees of an unincorporated church voluntary association, had insurable interest in church property even though title was in incorporated

church organization). At trial, plaintiffs will have the burden of proving the value of those interests. *DeBellis, supra,* 77 *N.J.* at 438.

Our result is consistent with the limitation on recovery in the policies to the actual interests of the insureds. The policies provided insurance "to the extent of the actual cash value of the property at the time of the loss but not  .  .  .  in any event for more than the interest of the insured  .  .  .." That language, required by *N.J.S.A.* 17:36–5.19, demonstrates that NJIUA contemplated insuring against a loss that might be less than the full amount of the policy. This conclusion comports with the legislation creating NJIUA, which provides that an insurable interest is "any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage." *N.J.S.A.* 17:37A–8(a)(3).

On July 26, 1977, twenty-one months after it obtained a judgment of foreclosure affecting 226 Springfield Avenue, Newark sent a letter to Miller's attorney offering to vacate the judgment on payment of taxes in full or in installments. However, that letter was sent along after the three-month period allowed by *N.J.S.A.* 54:5–87 for vacating such judgments. Miller apparently did not accept Newark's offer. In any event, the mere sending of the letter did not create a cognizable expectancy interest in Miller.

Plaintiffs are entitled to present proof of the value of their interests at a plenary hearing. *See Aetna Ins. Co. v. King,* 265 *So.2d* 716 (Fla.Ct.App.1972) (former owner who received livelihood from proceeds earned by daughter from operating grocery store had insurable interest in store); *Liverpool & London & Globe Ins. Co. v. Bolling,* 176 *Va.* 182, 10 *S.E.2d* 518 (1940) (divorced woman who operated general merchandise business in storehouse owned by former father-in-law to support herself and her children had an insurable interest in the storehouse even though she had no lease). *But see Van Cure v. Hartford Fire Ins. Co.,* 435 *Pa.* 163, 253 *A.2d* 663 (1969) (passage of title in

condemnation proceeding deprives former owner of insurable interest) and *Western Pa. Nat. Bank v. American Ins. Co. of Newark*, 428 *F*.2d 1220 (3d Cir. 1970) (following *Van Cure, supra* ).

To the extent that plaintiffs can establish that their interests have a pecuniary value, they may be allowed to recover under their policies. *See Aetna Ins. Co. v. King, supra; Brewster v. Michigan Millers Mut. Ins. Co.*, 274 *So*.2d 213 (La.Ct.App.1973) (former owner who conveyed property to sons "had a substantial economic interest in the preservation of the house which he had built on the property and over which he retained the right of occupancy and the right of control, including collection of rents"); *Smith v. Eagle Star Ins. Co., supra. But cf. Royal Ins. Co. v. Smith*, 77 *F*.2d 157 (9th Cir. 1935), rev'd on rehearing 93 *F.* 2d 143 (9th Cir. 1937), *cert.* den. 303 *U.S.* 656, 58 *S.Ct.* 759, 82 *L.Ed.* 1115 (1938) (mere licensee has no insurable interest; leasehold is insurable).

On the limited record before us, we cannot determine the pecuniary value of plaintiffs' insurable interests. Nonetheless, we hold that plaintiffs must be given an opportunity to establish the value of their interests.

We reverse the judgment of the Appellate Division and remand the matter for trial in accordance with this opinion.

*For reversal and remandment* —Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance* —None.