966 A.2d 1098

WILLIAM H. BALENTINE AND LUKE GIANETTA, PLAINTIFFS–RESPONDENTS, v. NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 23, 2009—Decided March 23, 2009.

Before Judges CARCHMAN,[1] R.B. COLEMAN and SABATINO.

*Thomas A. Shovlin* argued the cause for appellant (*Riley & Shovlin, P.A.,* attorneys; Mr. Shovlin, on the brief).

*Stephen M. Hiltebrand* argued the cause for respondents.

The opinion of the court was delivered by

[1] Judge Carchman did not participate in oral argument, but has been added to the opinion with consent of both counsel.

SABATINO, J.A.D.

This appeal raises the question of whether the record owner of real property, who is serving as the nominee of another person, has an insurable interest in that realty sufficient to recover the proceeds of a vandalism insurance policy on which he is listed as a named insured. The trial court answered that question in the affirmative, and so do we.

The facts, which are substantially undisputed, are as follows. Plaintiffs, William H. Balentine, a New Jersey resident, and Luke Gianetta, a Pennsylvania resident, are long-time friends who have known each other since their childhood. In 1992, plaintiffs jointly purchased a commercial warehouse building located at 1115 Haddon Avenue in Camden. The second story of the building contains a small apartment.

Two years later in 1994, when Balentine was in bankruptcy, plaintiffs jointly transferred the property to Gianetta for one dollar. Gianetta allowed Balentine to continue to use the property for business purposes. He issued a power of attorney to Balentine, allowing the latter to "take care of all incidents of ownership on behalf of Gianetta." Accordingly, Balentine paid the property taxes, insurance premiums, utilities and other expenses for the premises.

Through an independent agent, the Ken Curtis Agency ("Curtis"), a policy of liability and fire insurance for the premises was initially secured in April 2001, with defendant, New Jersey Insurance Underwriting Association ("NJIUA"). NJIUA is the assigned insurer for high-risk commercial properties in this State. *See N.J.S.A.* 17:37A–1 to –27. The policy limits were $130,000, with a $250 deductible. Among other things, the policy insured against losses from acts of vandalism.

The named insured listed under the NJIUA policy was "Luke Gianetta c/o William Balentine." The insurance writer at Curtis dealt with Balentine as Gianetta's agent. No mortgagee had an interest in the premises. The policy was renewed annually. The

renewal applications typically named either Gianetta, or "Luke Gianetta c/o William Balentine" as the applicant. They were signed by Balentine under his power of attorney.

The policy for the relevant coverage period, April 2004 through April 2005, named the insured as "Luke Gianetta c/o William Balentine." NJIUA charged a premium of $773 for that policy term. The insurer does not dispute that this premium was paid.

On August 12, 2004, an unlawful entry occurred at the premises. The intrusion caused vandalism and other damage to the structure. The legitimacy of these losses is uncontested for purposes of this appeal.

Five days later, a claim on behalf of Gianetta was filed with NJIUA to recover for the damages to the building. No claim was made for any personal losses.

NJIUA denied the claim, taking the position that Gianetta had no insurable interest in the property because he was merely Balentine's nominee. In support of its position, the carrier relied upon certain statements made by Gianetta when he was examined under oath by NJIUA's counsel prior to this litigation. In his recorded statement, Gianetta acknowledged that he did not personally pay the taxes, utilities, and other charges on the building; that he was not involved with its management; that he did not receive rental income; and that he had not claimed depreciation or tax deductions for the property.

After the vandalism occurred, Gianetta deeded the building back to Balentine. Balentine, in turn, sold the property in October 2004. He did not provide Gianetta with any of the sale proceeds.

Plaintiffs jointly filed a complaint against NJIUA in the Law Division, seeking coverage for the vandalism losses and other relief. In its answer to the complaint, NJIUA asserted, among other things, that "[p]laintiff Gianetta had no insurable interest in the covered property," and that, on the other hand, "[p]laintiff Balentine was not a named insured as of the date of the loss." NJIUA further asserted, upon information and belief, that "plain-

tiffs arranged to place the property in plaintiff Gianetta's name in order to shield it from plaintiff Balentine's creditors."

The parties cross-moved for summary judgment. After hearing oral argument, Judge Fratto concluded that Gianetta, as the record title owner, had an insurable interest in the premises. The judge noted that "[t]he arrangement between him [Gianetta] and Balentine is really of no concern" to NJIUA. Likewise, the judge found irrelevant "Gianetta's intent as to his distribution of the proceeds." In addition, the judge noted that "[d]efendant knew through Curtis all relevant facts to the relationship between the plaintiffs. Defendant accepted the premiums for damages to the building. Damage to the building occurred."

Consequently, the trial court entered a judgment in favor of plaintiff Gianetta in the sum of $29,000, which represented the amount of losses established in his claim and moving papers. NJIUA appeals that judgment, arguing that: (1) the trial court erred in deciding that title alone gave Gianetta an insurable interest, and (2) Balentine is also not entitled to the policy proceeds. NJIUA does not challenge the calculation of damages.

■ In order to recover proceeds on an insurance policy, the insured must have an insurable interest in the realty, chattel or person covered by that insurance. *Shotmeyer v. New Jersey Realty Title Ins. Co.,* 195 *N.J.* 72, 85–87, 948 *A.*2d 600 (2008). Pursuant to *N.J.S.A.* 17:37A–8, the assigned-risk statute that governs the NJIUA, "[a]ny person having an insurable interest in insurable property," who is unable to procure property insurance in the normal insurance market, is "entitled to apply to the [NJIUA] for such coverage[.]"

■ With respect to property, the test of insurable interest is " 'whether the insured has such a right, title or interest therein, or relation thereto, that he will be benefited by its preservation and continued existence *or* suffer a direct pecuniary loss from its destruction or injury by the peril insured against.' " *Hyman v. Sun Ins. Co.,* 70 *N.J.Super.* 96, 100, 175 *A.*2d 247 (App.Div.1961)

(quoting *Farmers Mut. Fire Ins. Co. v. Pollock*, 52 *Ga.App.* 603, 184 *S.E.* 383 (Ct.App.1936)) (emphasis added).

In *Hyman*, we considered the interests of a real estate broker, who had received an assignment to be paid his commission out of the proceeds of a mortgage for the property but who had not been assigned the mortgage itself or any part of it. *Id.* at 97–98, 175 *A.*2d 247. The mortgaged premises were damaged by fire before the broker had been paid out of the mortgage proceeds. *Ibid.* The fire insurer for the premises challenged the broker's claim of an insurable interest. *Id.* at 99, 175 *A.*2d 247. In deciding that the broker possessed such an insurable interest, we observed that it is "fundamental that one may have an insurable interest in property without any necessity of being the absolute owner thereof." *Ibid.* Specifically, " 'even one who has no title, legal or equitable, in the property, ... has an insurable interest therein, if he will derive benefit from its continuing to exist, or will suffer loss by its destruction.' " *Id.* at 100, 175 *A.*2d 247 (quoting *Williams v. Roger Williams Ins. Co.*, 107 *Mass.* 377, 379 (1871)).

The Supreme Court expounded upon these concepts in *Miller v. New Jersey Insurance Underwriting Ass'n*, 82 *N.J.* 594, 414 *A.*2d 1322 (1986). In that case, the Court resolved "whether an in rem judgment of foreclosure for unpaid real estate taxes deprives the former owners and mortgagees of an insurable interest in the real estate, so that an insurer need not pay under a fire insurance policy when a structure on the real estate is damaged." *Id.* at 596, 414 *A.*2d 1322. Echoing our observations in *Hyman*, the Court held in *Miller* that "[w]ith respect to real estate, an insurable interest need not rise to the level of legal or equitable title." *Id.* at 600, 414 *A.*2d 1322 (citations omitted). To hold otherwise, the Court noted, " 'would create a windfall for the insurance company and ignore what we conceive to be the reasonable expectations of the parties.' " *Id.* at 602, 414 *A.*2d 1322 (quoting *P.R. De Bellis Enters., Inc. v. Lumbermen's Mut. Cas. Co.*, 77 *N.J.* 428, 437–38, 390 *A.*2d 1171 (1978)).

The two plaintiffs in *Miller* had engaged in business transactions with each other in which, among other things, one plaintiff had purchased from the other the stock of the corporation that owned title to the property at issue, in exchange for a note, a second mortgage on a certain home, and some other obligations. *Id.* at 596–97, 414 *A.*2d 1322. The Court noted that these "business practices of the parties," however "casual or careless" they may have been, were not relevant. *Id.* at 597, 414 *A.*2d 1322. That finding of irrelevance comports with the well-settled principle that an insurance policy is generally to be governed by its own clear terms, without recourse to other documents, unless its language so requires. *See Villa v. Short,* 195 *N.J.* 15, 23, 947 *A.*2d 1217 (2008); *Herbert L. Farkas Co. v. N.Y. Fire Ins. Co.,* 5 *N.J.* 604, 609, 76 *A.*2d 895 (1950).

NJIUA contends that the trial court strayed from the precedents of *Hyman* and *Miller* by failing to analyze Gianetta's relationship to the insured premises, or lack thereof, beyond his status as the title owner of record. Had such an analysis been performed, NJIUA asserts, the court would have found that Gianetta was merely acting as Balentine's nominee and had no true pecuniary stake in the building.

NJIUA's arguments misread the significance of *Hyman* and *Miller.* Both cases illustrate that there are times when a person who *lacks* recorded ownership or title in property may, nevertheless, have an insurable interest in those premises because of other nexus factors. Neither case states that a person *with* such title of record can be deemed outside of the zone of an insurable interest.

■ Even though Gianetta apparently did not maintain the subject premises and had not derived any rents or other financial advantages from his ownership before the vandalism occurred, that does not mean that he was, in effect, a stranger to the property. He still remained the owner of record, and was publicly identified as such in the deed books and in the local tax rolls.

If the real estate taxes were unpaid, the municipality would have had recourse against Gianetta for the deficiency. Similarly, if an occupant or visitor were injured by a dangerous condition on the premises, Gianetta would face potential liability as the property owner. Consequently, in the absence of insurance coverage, Gianetta would "suffer a direct pecuniary loss from [the property's] destruction or injury by the peril insured against." *Hyman, supra,* 70 *N.J.Super.* at 100, 175 *A.*2d 247. If the vandals had destroyed the building entirely, the premises might not have been worth enough to satisfy the tax collector or a tort plaintiff with a premises liability case.

Gianetta may not have had much of an upside in owning the building (other than perhaps maintaining a friendship), but he surely had a downside if the premises were left uninsured. Nothing in the terms of the insurance policy, on which Gianetta was explicitly listed as a named insured, negates these common-sense implications.

If we adopted NJIUA's argument that neither Gianetta nor Balentine deserve to be paid for this loss, we would create a windfall for the insurer, allowing it to retain the premiums it reaped on this policy without providing anything in return. As the Supreme Court emphasized in *Miller, supra,* 82 *N.J.* at 602, 414 *A.*2d 1322, such a windfall is to be avoided.

NJIUA warns, as a matter of public policy, that allowing record title to suffice to create an insurable interest could encourage untoward or illicit behavior. At oral argument before us NJIUA suggested, by way of illustration, that an arsonist could buy property, assign it to a friend, and then torch the premises and have the friend collect and share the insurance proceeds. However, in that hypothetical scenario, the insurer would have a right of subrogation against the wrongdoer. *See N.J.S.A.* 17:36–5.20; *Standard Accid. Ins. Co. v. Pellecchia,* 15 *N.J.* 162, 171–73, 104 *A.*2d 288 (1954).

Lastly, although it is not essential to our analysis, we note that Gianetta and Balentine did not hide from NJIUA that they each

were involved with this property. Both of their names appeared on the insurance application forms, during multiple policy periods. Any concern that Balentine may have improperly shielded this asset from his creditors is for the bankruptcy court or some other forum to address.

In sum, the trial court's determination of insurable interest was well founded. We thus affirm the judgment in favor of Gianetta and the denial of NJIUA's cross-motion for summary judgment.