924 A.2d 607

PROGRESSIVE GROUP, PLAINTIFF–APPELLANT, v. LUZ MIRIAN HURTADO, ANGELA SARAY, JOFFREY VEINTIMILLA, CECE-LIA VEINTIMILLA, ROSA GUAZCO, AND GILMA VELES-QUEZ, DEFENDANTS,[1] AND LINA M. SARAY A/K/A LINA M. SARAY VELESQUEZ, DEFENDANT–RESPONDENT.[1]

Superior Court of New Jersey
Appellate Division

Argued May 21, 2007—Decided June 14, 2007.

---

[1] There are varied spellings of the parties' names in the pleadings.

Before Judges LINTNER, S.L. REISNER and SELTZER.

*Benjamin R. Messing,* argued the cause for appellant (*Methfessel & Werbel,* attorneys; *Patricia C. Soh,* on the brief).

*Yutonya V. Horton,* argued the cause for respondent (*Kramkowski Lynes Fabricant & Bressler,* attorneys; *Ms. Horton,* of counsel and on the brief).

The opinion of the court was delivered by

LINTNER, P.J.A.D.

This appeal from a judgment in a declaratory action arises from a dispute between two insurance companies, the Progressive Group (Progressive) and Liberty Mutual Fire Insurance Company (Liberty Mutual), respecting potential liability coverage for a June 17, 2002, intersection accident involving a 1992 Honda Accord. The coverage issue involved whether or not legal title to the Honda had been effectively transferred on June 1, 2002. Progres-

sive instituted the declaratory action seeking to have its policy declared terminated as of June 1. Liberty Mutual had entered a defense for the driver of the Honda and sought to compel Progressive to provide coverage.[2] Cross motions for summary judgment were filed. In his written findings of fact and conclusions of law, the judge determined that "[t]here was never a perfected transfer of ownership" because the certificate of title had not been filed with the Division of Motor Vehicles and the Progressive policy had not been cancelled. He concluded that coverage remained with Progressive. Progressive appeals and we affirm for slightly different reasons. *See Isko v. Planning Bd. of Livingston,* 51 *N.J.* 162, 175, 238 *A.*2d 457 (1968), *abrogated on other grounds, Commercial Realty & Res. Corp. v. First Atl. Props. Co.,* 122 *N.J.* 546, 585 *A.*2d 928 (1991).

On June 1, 2002, Luz Hurtado, a New York resident, agreed to sell her 1992 Honda Accord for $2500 to her cousin Gilma Velesquez, a New Jersey resident, who was purchasing the vehicle for her daughter Angela Saray. At the time, the Honda was covered with a policy of insurance issued by Progressive. The policy had an automatic termination provision that terminated coverage when a person, other than the owner or a resident relative, took ownership of the vehicle. The policy defined " **'Owner'** " as "any person who ... holds legal title to the vehicle." The policy also contained a provision stating that "[t]his policy may not be transferred to another person without **our** written consent."

Hurtado signed and dated the certificate of title for the Honda as "Seller" on June 1. She left the Honda and certificate of title with Gilma and took the train home to New York. According to Hurtado, she intended to leave the New York license plates and the insurance on the car for three weeks until Gilma could obtain her own insurance and register the car with the Division of Motor Vehicles. The certificate of title was also signed and dated by

---

2 Liberty Mutual entered its defense under a reservation of rights.

Angela as "Buyer" on June 1. The space for the odometer reading was left blank.

On June 17, 2002, Lina Saray Velesquez, Gilma's other daughter, was driving the Honda, purportedly with permission, when she was involved in an intersection accident with a vehicle driven by Joffrey Veintimilla. Veintimilla subsequently filed a personal injury lawsuit on behalf of himself and his wife. At the time of the accident, Lina, also a New Jersey resident, was covered with a Standard Auto Policy on her 2001 Nissan issued by Liberty Mutual. The day following the accident, Hurtado reported the accident to Progressive and cancelled the policy effective June 18, 2002.

On appeal, relying on *New Jersey Manufacturers Insurance Co. v. Keystone Insurance Co.*, 112 *N.J.Super.* 585, 272 *A.2d* 306 (Ch.Div.1971), Progressive contends the judge erred in determining that title had not been effectively transferred because the certificate of title had not been filed with the Division of Motor Vehicles. It also argues that the assignment of the certificate of title was properly and fully executed and delivered to the purchaser along with the physical possession of the vehicle, thus triggering the automatic termination provision of the policy. Progressive challenges Lina's assertions that Progressive is estopped from denying coverage [3] and that she and Hurtado had a reasonable expectation of coverage because Hurtado intended to continue and pay for coverage for three weeks after June 1. Progressive maintains that Lina's arguments are not applicable here because the automatic termination provision and policy transfer provisions were clear and unambiguous.

We first address the arguments respecting reasonable expectations and estoppel. The judge did not base his determination upon reasonable expectations or estoppel nor the intent of the parties to the transaction. Instead, he determined that, because

---

[3] Hurtado's estoppel argument is based upon Progressive's failure to return the premium paid for the period of June 1 to June 17, 2002.

title was not effectively transferred, the automatic termination provision of the Progressive policy was not triggered. More importantly, the intent of the parties as to who was the true owner of the vehicle at the time of the accident is not the relevant issue. Rather, the issue is whether, for insurance purposes, "legal title" and, hence, ownership under the Progressive policy was effectively transferred at the time of the accident by a proper and fully executed assignment of the certificate of title within the contemplation of the statute. *See Velkers v. Glens Falls Ins. Co.*, 93 *N.J.Super.* 501, 514–18, 226 *A.*2d 448 (Ch.Div.) (citing *Eggerding v. Bicknell*, 20 *N.J.* 106, 111–12, 118 *A.*2d 820 (1955)), *aff'd o.b.*, 98 *N.J.Super.* 166, 236 *A.*2d 408 (App.Div.1967), *certif. denied*, 51 *N.J.* 388, 241 *A.*2d 7 (1968).

If legal title was effectively transferred, then under Progressive's policy, coverage would have automatically terminated, absent written consent by Progressive transferring coverage to Angela. We therefore consider the requirements for the effective transfer of legal title. Legal title to an automobile cannot be considered transferred until the parties have "compl[ied] strictly with the statutory directions" for transferring title to motor vehicles. *Eggerding, supra,* 20 *N.J.* at 111, 118 *A.*2d 820. An "incomplete assignment under the statute [does] not legally serve to transfer title." *Velkers, supra,* 93 *N.J.Super.* at 517, 226 *A.*2d 448.

*N.J.S.A.* 39:10–5 of the Motor Vehicle Certificate of Ownership Law (Certificate of Ownership Law), *N.J.S.A.* 39:10–1 to –37, provides that "[n]o person shall sell or purchase any motor vehicle in this state, except in the manner and subject to the conditions provided in this chapter." Thus, because the transaction occurred in New Jersey and the issue is whether title to a vehicle was properly transferred to a person in New Jersey, New Jersey law applies.[4]

---

[4] In its appellate brief, Progressive asserts that the law of New York and New Jersey are the same, so under either law the result would be the same.

Under *N.J.S.A.* 39:10–9, a seller of a used motor vehicle is required to "execute and deliver to the purchaser, an assignment of the certificate of ownership." The enforcement of the Certificate of Ownership Law is "intrusted to the commission [of Motor Vehicles] and it may make rules and regulations necessary in its judgment for ... administration and enforcement." *N.J.S.A.* 39:10–4. *N.J.A.C.* 13:21–5.9(a), entitled "Transferring of ownership on certain motor vehicles," states that "[e]very person ... shall, at the time he transfers ownership of a vehicle, having a mileage recording instrument (odometer), disclose in writing, to a buyer ... the cumulative mileage appearing on the mileage recording instrument (odometer)." Notably, the commission has indicated that the regulation does not exempt used vehicles which are more than ten years old as does the federal law under 49 *C.F.R.* § 580.17(a)(3). The commission's stated reason for exceeding the federal standard, as permitted under 49 *U.S.C.A.* § 32705, was to avoid "hinder[ing] the efforts of law enforcement authorities to prosecute alleged violations of *N.J.S.A.* 2C:21–8."[5] 38 *N.J.R.* 2875(a) (July 3, 2006).

Hurtado's failure to strictly comply with the Certificate of Ownership Law by not providing an odometer reading as required by *N.J.A.C.* 13:21–5.9(a) rendered the assignment of the certificate

----

[5] *N.J.S.A.* 2C:21–8 provides:

A person commits a disorderly persons offense when he sells, exchanges, offers for sale or exchange or exposes for sale or exchange a used motor vehicle on which he has changed or disconnected the mileage registering instrument on the vehicle to show a lesser mileage reading than that actually recorded on the vehicle or on the instrument with purpose to misrepresent the mileage of the vehicle. This provision shall not prevent the servicing, repair or replacement of a mileage registering instrument which by reason of normal wear or through damage requires service, repair or replacement if the instrument is then set at zero or at the actual previously recorded mileage.

In addition to the penalty authorized for violation of this section, the Director of the Division of Motor Vehicles may, after notice and hearing, revoke the license of any motor vehicle dealer as defined in R.S. 39:1–1 so convicted.

of title incomplete and thus "did not legally serve to transfer title" when subsequently signed and dated by Angela.[6] *Eggerding, supra,* 20 *N.J.* at 112, 118 *A.*2d 820. We agree with Progressive that the decision in *New Jersey Manufacturers Insurance Co., supra,* 112 *N.J.Super.* 585, 272 *A.*2d 306, is contrary to the motion judge's determination and supports its position that the filing of the assignment of the certificate of title with the Division of Motor Vehicles is not required to have a valid transfer of legal title, so long as the seller provides a "proper assignment, fully executed." *Id.* at 590, 272 *A.*2d 306. However, the assignment here was not fully executed and, thus, we need not decide in this appeal whether the decision in *New Jersey Manufacturers Insurance Co.* represents binding authority. As a permissive user of Hurtado's vehicle, Lina was covered under the policy's omnibus liability clause. *See Jaquez v. Nat'l Cont'l Ins. Co.,* 178 *N.J.* 88, 93–94, 835 *A.*2d 309 (2003).

Affirmed.

---

[6] Although intent is not the central issue, the failure on the part of Hurtado to fill in the odometer reading is consistent with her testimony that she did not intend to transfer legal title immediately.