**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0553-18T1

FIDELITY AND GUARANTY
INSURANCE UNDERWRITERS,
INC.,

     Plaintiff-Appellant,

v.

CHUBB NATIONAL INSURANCE
COMPANY,

     Defendant-Respondent.

_____

Argued December 2, 2019 – Decided October 8, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1860-17.

Timothy P. Smith argued the cause for appellant (Kinney Lisovicz Reilly & Wolff PC, attorneys; Timothy P. Smith, of counsel and on the briefs).

John M. Bashwiner argued the cause for respondent (Bashwiner and Deer, LLC, attorneys; John M. Bashwiner, of counsel and on the brief).

The opinion of the court was delivered by

MITTEROFF, J.A.D

In this insurance coverage action, plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. (Fidelity) appeals two August 24, 2018 orders entered on the parties' cross-motions for summary judgment. The case involves Fidelity's action seeking contribution from Chubb National Insurance Company (Chubb) towards underinsured motorists (UIM) benefits Fidelity paid to its insured. Finding that Chubb's insured had no insurable interest in the subject vehicle at the time of the accident, the motion judge dismissed Fidelity's contribution claim on summary judgment. Having reviewed the record, and in light of the applicable law, we affirm.

We discern the following facts from the record. Arthur J. Nilson (Arthur)[1] and Roslyn W. Nilson (Roslyn), both Pennsylvania residents, were named insureds under an automobile insurance policy issued by Chubb. This policy, which was effective from May 18, 2013 through May 18, 2014, listed Arthur and Roslyn's 2001 GMC Yukon as a covered vehicle. On August 30, 2013, Arthur executed a notarized certificate of title, transferring ownership of the

---

[1]  Because four of the subject insureds share the same last name, we refer to them by their first names to avoid confusion. We intend no disrespect.

A-0553-18T1

Yukon to his brother, Geoffrey Nilson (Geoffrey). At the time of the assignment, Geoffrey was the named insured under an automobile policy issued by Fidelity, which was effective from June 16, 2013 through December 16, 2013. The Fidelity policy listed Geoffrey's wife, Margaret Nilson (Margaret), as a covered driver. At the time of the relevant events, Geoffrey and Margaret were New Jersey residents.[2]

By happenstance, August 30, 2013, was the Friday commencing the Labor Day weekend. Accordingly, after receiving the executed title and taking possession of the Yukon, Geoffrey and Margaret did not have an immediate opportunity to register the vehicle in their name. On Tuesday, September 3, 2013, while Margaret was driving the Yukon in New Jersey, she was rear-ended by another driver.

At the time of the accident, the Yukon was still listed as a covered vehicle under the Chubb policy. Sometime on September 3, but after the accident, Arthur contacted Chubb to request the Yukon be removed as a covered vehicle under the policy. That same day, Chubb removed the Yukon from its policy, and issued a return premium to Arthur and Roslyn. In addition, on September 3, but

---

[2] Both the Fidelity policy and the Chubb policy provide underinsured motorists (UIM) coverage of $500,000 per "occurrence" or "accident."

A-0553-18T1

after the accident, Geoffrey added the Yukon as a covered vehicle under his policy with Fidelity. Thereafter, he filed the certificate of title with the New Jersey Motor Vehicle Commission.

After Margaret settled her liability claims against the rear-ending driver, she received UIM benefits totaling $175,000 from Fidelity. Fidelity then sought contribution from Chubb. Chubb denied the claim for contribution, maintaining that any insurable interest its clients had in the Yukon "completely terminated upon the transfer of title."

On August 24, 2017, Fidelity filed the within declaratory judgment action against Chubb seeking contribution for the UIM benefits it had paid to Margaret. On August 24, 2018, on cross-motions for summary judgment, the judge denied plaintiff's motion for summary judgment and granted defendant's cross-motion for summary judgment, dismissing Fidelity's complaint with prejudice. The judge relied upon Progressive Group v. Hurtado, 393 N.J. Super. 517 (App. Div. 2007), stating that "the filing of the assignment of the certificate of title with the Division of Motor Vehicles [DMV] is not required to have a valid transfer of legal title, so long as the seller provides a 'proper assignment, fully executed.'" The judge added that "[t]he request for new title by the purchaser, whenever it

was actually completed, was submitted and certified by Fidelity's insured in reliance upon the assignment dated August 30, 2013."

The judge agreed with Chubb that the execution of the notarized assigned certificate of ownership on August 30 effectively transferred title to the Yukon, notwithstanding that Geoffrey did not register title until after the accident. The judge concluded that the transfer of ownership automatically extinguished any insurable interest held by Geoffrey vis a vis the Yukon, barring Margaret's claim and Fidelity's derivative claim.

This appeal ensued.

On appeal, Fidelity raises the following arguments:

> I.   THE STANDARD OF APPELLATE REVIEW OF A GRANT OF SUMMARY JUDGMENT IS DE NOVO.
>
> II.  THE COURT BELOW ERRED IN GRANTING SUMMARY JUDGMENT TO [DEFENDANT], BECAUSE [DEFENDANT'S] DUTY TO PROVIDE UIM COVERAGE ON THE YUKON DID NOT END UNTIL [DEFENDANT'S] POLICY WAS CANCELLED, WHICH OCCURRED AFTER THE ACCIDENT.
>
> > A. THE COURT BELOW FAILED TO APPLY [DEFENDANT'S] POLICY AS WRITTEN.
> >
> > B. THIS COURT SHOULD ENFORCE UIM COVERAGE FOR WHICH [DEFENDANT'S] INSURED PAID.

5

C. MARGARET NILSON HAD AN INSURABLE INTEREST IN RECOVERING UIM BENEFITS UNDER POLICIES THAT INSURED THE YUKON AT THE TIME OF THE ACCIDENT.

D. THE INSURABLE-INTEREST DOCTRINE DOES NOT PRECLUDE UIM COVERAGE BECAUSE THIS CLAIM IS NOT AN ILLICIT USE OF INSURANCE.

III. BY ACCEPTING PREMIUM PAYMENTS THROUGH THE DATE OF LOSS, [DEFENDANT] WAIVED ITS RIGHT TO ASSERT THAT THE INSURABLE INTEREST DOCTRINE PRECLUDED UIM COVERAGE (NOT RAISED BELOW).

A. UNDER THE PLAIN ERROR DOCTRINE, THIS COURT SHOULD REVIEW THE ISSUE OF WAIVER BECAUSE THE ASSERTION OF THE INSURABLE-INTEREST DOCTRINE WAS CLEARLY CAPABLE OF PRODUCING AN UNJUST RESULT AND BECAUSE [DEFENDANT] WILL NOT BE PREJUDICED BY ADDRESSING AN ISSUE OF LAW ON AN UNDISPUTED FACTUAL RECORD.

B. BECAUSE [DEFENDANT] ACCEPTED PAYMENT FOR COVERAGE OF THE YUKON THROUGH THE DATE OF LOSS, IT WAIVED ITS RIGHT TO ARGUE THAT IT DID NOT COVER THE YUKON AS OF THE DATE OF THE ACCIDENT.

IV. BECAUSE [DEFENDANT'S] POLICY PROVIDED UIM COVERAGE FOR THE

6

YUKON AS OF THE TIME OF THE ACCIDENT, [DEFENDANT] MUST REIMBURSE [PLAINTIFF] FOR ONE-HALF OF THE UIM COVERAGE THAT [PLAINTIFF] PAID TO THE INSURED.

The standard of review for a grant of summary judgment is de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, "summary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)); see R. 4:46-2(c). In reviewing a grant of summary judgment, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 536 (1995) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986)). However, "conclusory and self-serving assertions by one of the parties are insufficient to overcome [a summary judgment] motion[.]" Puder v. Buechel, 183 N.J. 428, 440 (2005). If there is no issue of fact, we give no special deference to the trial court's rulings on matters of law. Templo Fuente, 224 N.J. at 199.

A-0553-18T1

The facts in this case are undisputed and the matter is therefore ripe for summary judgment. The resolution of the case centers on two issues: (1) whether the notarized assignment of title by Arthur was sufficient to transfer ownership to Geoffrey; and (2) whether the transfer of ownership terminated any insurable interest in the vehicle under the Chubb policy. We conclude that the trial court correctly answered both questions in the affirmative.

The first issue is whether, for insurance purposes, "legal title" and, hence, ownership under the Chubb policy was effectively transferred prior to the accident. N.J.S.A. 39:10–5 of the Motor Vehicle Certificate of Ownership Law,[3] dictates that "[n]o person shall sell or purchase any motor vehicle in this state, except in the manner and subject to the conditions provided in this chapter." Title to an automobile is not legally transferred unless the parties have strictly complied with the statutory directives for transferring title. Progressive Grp. v. Hurtado, 393 N.J. Super. 517, 521 (App. Div. 2007), citing Eggerding v. Bicknell, 20 N.J. 106, 111 (1955). In that regard, N.J.S.A. 39:10–9, requires a seller of a used motor vehicle to execute and deliver to the purchaser, an assignment of the certificate of ownership." Hurtado, 393 N.J. Super. at 522. If a seller executes and delivers an assignment in good faith, ownership will have

_____

[3] N.J.S.A. 39:10-1 et seq.

transferred even if the buyer fails to register the vehicle with the DMV. <u>James v. Francesco</u>, 61 N.J. 480, 489 (1972).

An incomplete assignment, however, does not legally transfer title. <u>Hurtado</u>, 393 N.J. Super. at 522. Thus, in <u>Hurtado</u>, after the seller failed to provide an odometer reading in violation of 13:29-5.9(a), we held the omission rendered the assignment incomplete and "did not legally serve to transfer title" when later signed and dated by the buyer. <u>Hurtado</u>, 393 at N.J. Super. at 522–23. <u>See also</u> <u>Verriest v. INA Underwriters Ins. Co.</u>, 142 N.J. 401, 408 (1995) (seller remained owner of vehicle because he left name of buyer blank on transfer of title form); <u>Eggerding</u>, 20 N.J. at 112 (transferor Chonka Motors failed to complete transfer of ownership by delivering to the transferee with a title that was not fully executed as it left blank the identity of the buyer).

Here, the certificate of title was properly executed, signed by both parties before a notary, and delivered to the buyer. There is no allegation of a violation of the Certificate of Ownership Law in the title's execution and delivery, and none is apparent. Accordingly, we affirm the motion judge's conclusion that ownership of the Yukon was legally transferred on August 30, 2013.

We turn to the second issue under review: whether the assignment of title extinguished any insurable interest against which Margaret could recover UIM

benefits. In that regard, "[w]hat constitutes an insurable interest is a subject which has received a great deal of judicial consideration, and which some text writers say is incapable of exact definition." Miller v. New Jersey Ins. Underwriting Ass'n, 82 N.J. 594, 600 (1980) (quoting Trade Ins. Co. v. Barracliff, 45 N.J.L. 543, 546 (E. & A.1883)). As a governing principle, however, "[a]n insured retains an insurable interest as long as he has a reasonable expectation of deriving pecuniary benefit from the preservation of the property or would suffer a direct pecuniary loss from its destruction." Miller, 82 N.J. at 600, citing Barracliff, 45 N.J.L. at 549-551 (additional citations omitted). If one of these conditions is satisfied, a person may have an insurable interest even where he or she lacks legal title to the property. See e.g., Hyman v. Sun Ins. Co., 70 N.J. Super. 96, 101 (App. Div. 1961) (assignee of mortgage payment has insurable interest in mortgagee's property in the amount of the payment due); Antell v. Pearl Assurance Co., 252 Minn. 118, 127 (1958) (holding an insured who made an offer to purchase building, was issued policy of fire insurance on the structure, whose offer was subsequently accepted and he made the required down payment, when building was destroyed by fire before insured made final payment, policy was nonetheless binding and insurer was liable to extent of damage to property, although insured had no insurable interest

A-0553-18T1

in property at time policy was issued), citing <u>Sun Ins. Office v. Merz</u>, 64 N.J.L. 301, 304 (1900).

In this case, upon the transfer of the Yukon's ownership to Geoffrey, he no longer had "a reasonable expectation of deriving pecuniary benefit from the preservation of the [Yukon], nor would he "suffer a direct pecuniary loss from its destruction." <u>Miller</u>, 82 N.J. at 600. Upon transfer of title, Arthur's registration was rendered void by operation of law. N.J.S.A. 39:3-30; <u>James</u>, 61 N.J. at 489. He therefore could not be legally liable for any claims arising after August 30, 2013. Accordingly, Chubb would have no duty to cover any claims after that date because its insured lacked the requisite possessory or expectancy interest that would give rise to an insurable interest. Geoffrey and Margaret, in contrast, unquestionably had an insurable interest in the Yukon that was fulfilled by Fidelity's coverage of Margaret's claim.

Our determination that Arthur and Roslyn Nilson lacked an insurable interest in the Yukon at the time of the accident renders the remaining issues moot, and we will therefore not address them.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0553-18T1